69 So.2d 295

**BECKER ROOFING CO.   v.   CARROLL.**

6 Div. 536.

Court of Appeals of Alabama.

Oct. 27, 1953.

Rehearing Denied Dec. 8, 1953.

Gibson, Hewitt & Gibson, Birmingham, for appellant.

H. E. Mitchell, Cullman, for appellee.

HARWOOD, Judge.

In the suit below, which was tried before the court without a jury, the plaintiff claimed of the defendant $500 damages for breach of warranty as to the quality of a roof placed on plaintiff's house by the defendant....

The plaintiff paid the full charges of $265 for the installation of the roof, and was issued a "Material Guarantee" by the defendant which, in pertinent parts provided that:

"* * * the manufacturers guarantee that should the roofing products applied * * * fail to be waterproof for a period of twenty years from the date of application because of any defects in material or manufacture we will either make the same waterproof at our expense or bear such proportion of the expense of replacing said defective materials (said expense to include both the cost of material and labor) as is the ratio of the unexpired term of this guarantee to the entire 20 year period, based on the original price as set out herein.

"This guarantee does not cover workmanship of application or defects arising therefrom or damage attributable to tempestuous weather conditions, or hail storms nor shall it be construed to impose any liability upon us for damages which may be caused to said building (other than the roofing) or the contents thereof.

"Should a claim be made under this guarantee we reserve the right to have such investigation made and require such proof as may be necessary to determine the cause, and a sample of the defective material must be sent to the nearest Becker Roofing Company office for testing and examination in order that we may determine our responsibility hereunder."

The complaint averred a breach of the above guarantee, alleging that the defendant "put roofing on plaintiff's dwelling house which was defective in material and manufacture and was not waterproof and defendant has failed and refused to make said roofing waterproof or to replace said defective roofing after demand made by plaintiff... The said roofing was defective in that it was decayed or faulty material when defendant placed it on plaintiff's building, that it has broken and fell from said dwelling since the date

it was placed thereon, and is now falling from said building. As a proximate consequence of said breach by the defendant, the plaintiff has lost the purchase price paid for said roofing in the sum of $265 together with the use thereof since September 26th, 1944, and plaintiff was put to great trouble, inconvenience, and expense in and about getting said roof repaired, and said roofing was and is worthless to plaintiff and lost to him, all to the damage of the plaintiff as aforesaid."

In the hearing below the plaintiff testified that shortly after the roof was placed on his house in September 1944, that is in 1945, it began to crack and fall off, and the roof leaked in lots of places. As plaintiff phrased it: "The thing would just roll off, it was so rotten. Just a little wind and it would blow off." The plaintiff further testified that pieces of the roof would sometimes fall off on pretty sunny days.

Thereafter, in 1946 and 1947 the plaintiff notified the defendant that the roof was leaking, and on six occasions the defendant repaired, or attempted to repair the roof. According to the plaintiff the roof continued to leak.

In 1950 the plaintiff was visited by a representative of the defendant, this being in connection with the seventh complaint registered by the plaintiff. The plaintiff testified that on this occasion he did not refuse to let the defendant repair the roof again, nor did he refuse to accept a new roof, but he did ask that his money be refunded; that he did not want any more Becker roofing, but he did not tell defendant's agent that; this last representative wouldn't do anything, though he did take samples of the roofing material.

The plaintiff further testified that he had been a carpenter, had had experience in buying and examining roofing material, and had put on lots of roofs; that the roofing material put on his house was rotten and defective.

For the defense Mr. E. W. Lockhart testified that as manager of the defendant company he, in response to a letter from the plaintiff, went to plaintiff's home and told him he wanted to talk to him about his roof.

The defendant told him:

"I don't want another Becker roof; I don't want to have anything to do with putting on another roof, and all I want is my money back, and that ended our conversation."

Mr. Lockhart further testified that the plaintiff told him on this visit that all he wanted was his money back.

Mr. Lockhart further testified that on this visit he picked up a piece of roofing which the plaintiff said had fallen from the roof.

Later Mr. Lockhart mailed this to the Becker Roofing Company in Chicago.

By depositions it was shown that this piece of roofing was examined by R. Y. Pearson, chemist for the Chicago Testing Laboratories, whose testimony was to the effect that the piece of roofing he tested was waterproof, and that no water would permeate through it.

The court entered judgment in favor of the plaintiff and assessed his damages at $265, and the costs. From such judgment the defendant below perfected this appeal.

Appellant's counsel argues that error resulted from the entry of the judgment in appellee's favor in that under the express agreement the appellant was under the duty only to make the roof waterproof, or to bear a proportionate expense of replacing the defective materials as is the ratio of the unexpired term to the 20-year period, and that if it was determined that appellant could not waterproof the roof, then the appellee should have had the defective roof replaced and called upon appellant for that part of the expense as provided in the formula set forth in the express agreement.

It is true that the cases seem to establish that where the parties have set

out in a written contract the warranties agreed upon and have provided a remedy in case of a breach of the warranty, the remedy thus provided is exclusive. *Permutit Co. v. Massasoit Mfg. Co.,* 3 Cir., 61 F.2d 529, and cases cited therein.

However, where no time is fixed in the agreement for remedying the defects, they must be remedied within a reasonable time, and an unsuccessful attempt to remedy the defect renders the seller liable on his warranty, and the buyer is not bound to allow continued attempts to correct the defect. See 77 C.J.S., Sales, § 340, and cases cited. Under this principle the trial court was, under the evidence of this case, justified in concluding that the appellant had exhausted all reasonable limitations as to time in which to make the appellee's roof waterproof.

The remedies provided under the agreement were alternative, that is, the appellant was to either make the roof waterproof, or else was to pay a proportionate share in replacing the defective materials.

■ Where a contract provides for alternatives, and an election of one alternative is manifested, all rights as between the parties will attach as from the making of the contract. *Collins v. Whigham,* 58 Ala. 438.

■ The appellant having elected to attempt to render the roof waterproof, and in fact having made six attempts to do so over a long period of time, is now in no position to insist that the appellee should have proceeded under the second alternative, the appellant's own conduct being such as to have lulled appellee into failing to assert his rights, and evidencing on appellant's part an election of the remedy to render the roof waterproof.

Appellant further asserts as error a failure by appellant to offer evidence reasonably establishing his damages.

In this regard the evidence introduced by the appellee showed that he paid $265 for the installed roof.

Appellee's evidence further tended to show that the roof was totally worthless for the purpose for which it was installed due to the defective quality of the roofing.

Title 57, Sec. 75(7) of our Sales Act provides:

"In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty."

■ However, in the absence of other evidence, and there was none in this case, the purchase price agreed on is prima facie evidence of the value of goods had they been as warranted. *Lamborn & Co. v. Green & Green,* 150 Tenn. 38, 262 S.W. 467. Or as stated in 77 C.J.S., Sales, § 367, page 1305, which statement is supported by authorities from other jurisdictions: "In fixing the value of property if it were as warranted, as an element of the measure of damages, the purchase price has been said to be strong but not conclusive, the best, prima facie, strong prima facie, or, in the absence of other evidence, sufficient evidence of such value."

The evidence presented by the appellee further tended to show that the roof was valueless to the appellee for the purpose for which it was installed.

This being so it is our conclusion that all of such evidence furnished a sufficient basis on which the court could properly assess the damages as being the amount of the purchase price of the roof.

Appellant's counsel further urge as error the action of the court in excluding a portion of an answer given in the interrogatory of Mr. Pearson, the chemist with the Chicago Testing Laboratories. In this connection the record shows that the interrogatories to Mr. Pearson contained, among others, the following questions:

"(c) From all tests made by you, if any, of a portion of the roofing material contained in said envelope, did you form an opinion as to the waterproof qualities of same?

"Mr. Mitchell: We move to exclude that as not being shown to be an expert and in the form of his answer he says 'proving that it would be waterproof.'

"Court: That objection to 'proving' part of it is sustained.

"Mr. Gibson: The defendant excepts.

"(d) If your answer to the immediately preceding interrogatory is in the affirmative, please state your opinion as to the waterproof qualities of said piece of roofing material.

"Mr. Mitchell: We object to that.

"Court: Overruled.

"Mr. Mitchell: We except.

"Court: I will exclude that answer.

"Mr. Gibson: The Defendant excepts."

The record further shows the following during the reading of the answers:

"To the Twenty-second (c) Interrogatory, he said:

"Yes, I did.

"To the Twenty-second (d) Interrogatory, he said:

"The test proved beyond a doubt that this roofing is absolutely waterproof."

It will be noted that as the record appears, the ruling was actually applicable to question twenty-second d rather than to twenty-second c.

Counsel insists that the court erred in this connection in that it is reversible error to sustain an objection made for the first time during a trial to testimony in a deposition, as it should have been made before the trial to afford the proponent an opportunity to cure the defect. See Wallace v. Elliott, 220 Ala. 125, 124 So. 286; Title 7, Sec. 470, Code of Alabama 1940.

Pretermitting the question of our propriety to review this point because of the state of the record, and also pretermitting consideration of the validity of the legal principles urged by appellant's counsel as governing, it also appears that Mr. Pearson had previously testified in his deposition, without objection, that he had tested the specimen of roofing for waterproofness, and that the same was definitely waterproof. This was substantially the same evidence concerned in the ruling by the court. The ruling was therefore in any event without injury to appellant. Wallace v. Elliott, supra, Supreme Court Rule 45, Code 1940, Tit. 7 Appendix.

During the re-cross and re-direct examination of the appellant the record shows the following:

"Re-Cross Examination

"By Mr. Gibson:

"Q. Mr. Carroll, Mr. Mitchell asked you with reference to the last man of Becker Roofing Company that came out and talked to you, as to whether he offered you your money back or a new roof, and I believe you said that he did not, if he had, you would have been glad to have taken it. Did you mean the money or the roof? A. I meant the money. I wouldn't have accepted the roof.

"Q. You wouldn't have accepted the roof? A. No, sir.

"2nd Re-Direct Examination

"By Mr. Mitchell:

"Q. You would have accepted the roof, though, if he had offered it to you—a roof that was not defective?

"Mr. Gibson: We object to that, on the grounds that it calls for an unauthorized conclusion; immaterial, leading, suggestive; invades the province of the Court as to what he would have done.

390

"Court: Overruled.

"Mr. Gibson: We except.

"A. If he had offered a good roof, I would have accepted it."

Counsel for appellant argue that the court erred in overruling the objection to the question on redirect examination as shown above in that the question elicits self-serving testimony, and would involve a mental operation.

No error resulted in the above ruling. As the entire excerpt shows, the matter was first brought into evidence by the appellant on cross-examination.

A party may be examined as to his motive, reason, intent or purpose in doing a certain act where these acts have been injected into the evidence by the opposing party. Montgomery v. State, 2 Ala.App. 25, 56 So. 92; General Accident, Fire & Life Assur. Corporation v. Jordan, 230 Ala. 407, 161 So. 240; Armour & Co. v. Cartledge, 234 Ala. 644, 176 So. 334. See also 1 Ala. Lawyer 221.

Affirmed.