162 So.2d 621

STATE FARM MUTUAL AUTOMOBILE INS. CO. et al.

v.

Frank DODD, Administrator.

6 Div. 989.

Supreme Court of Alabama.

March 26, 1964.

412

Rives, Peterson, Pettus & Conway, Birmingham, for State Farm Mut. Auto. Ins. Co.

London, Yancey, Clark & Allen, Birmingham, for Bradley & Bedsole.

Higgins, Windham, Perdue & Johnson, Ritchey & Nicholson and J. M. Hawkins, Birmingham, for appellee.

SIMPSON, Justice.

Frank Dodd, suing as administrator of the estate of his deceased son, Jack Dodd, filed a complaint claiming $250,000.00 damages under the Homicide Act, alleging that the defendants, State Farm Mutual Automobile Insurance Company, T. M. Bradley, individually, and H. T. Bedsole, individually and Bradley & Bedsole Body Shop, a partnership composed of the aforesaid individuals, negligently caused injury to plaintiff's decedent, who died as a result of an automobile accident on December 7, 1957. The gravamen of the complaint was that State Farm, as collision insurer of an automobile, undertook to repair the automobile through the facilities of Bradley & Bedsole Body Shop, and that such repairs were negligently made, and as a proximate consequence of such negligence the automobile in which plaintiff's intestate was riding collided with a bridge abutment, so injuring the plaintiff's intestate that he died.

The case ultimately went to trial on the following count (3C) to which appellants' demurrers were overruled:

"Plaintiff, Frank Dodd, who sues as the administrator of the estate of Jack Dodd, deceased, claims of the defendants the sum of Two Hundred Fifty Thousand ($250,000.00) Dollars as damages, for that heretofore on, to-wit: the 8th day of December, 1957, and prior thereto, the defendant insurance company was engaged in the business of insuring individuals against loss resulting from automobile collisions; the other defendants were engaged in the business of repairing damaged automobiles; that Frank Dodd's automobile was insured by the defendant insurance company when it was involved in a collision; that the defendant insurance company's agents, servants, or employees, while acting within the line and scope of their employment as such, pursuant to its duty by virtue of its insuring agreement with Frank Dodd, undertook to repair the damage to said automobile, and without the knowledge or consent of Frank Dodd, obtained the assistance of the other defendants, who thereupon undertook such repairs; that the defendants, their agents, servants or employees, while acting within the line and scope of their employment as such, did so negligently repair the said automobile that said automobile was in a defective and dangerous condition in that the steering mechanism did not properly operate; that as a proximate consequence of said negligent repairs, the said automobile, while plaintiff's intestate was operating said automobile with the consent of the said Frank Dodd, on said date, on Old U. S. Highway 31, approximately one mile north of Fultondale, Jefferson County, Alabama, suddenly turned or darted and collided with a bridge abutment, thereby injuring plaintiff's intestate so that he died.

"And Plaintiff avers that the death of his said intestate was proximately

**414**

caused by the negligence of the defendants, their agents, servants or employees, while acting within the line and scope of their employment as such, in this: they negligently repaired the said automobile in such a way that the steering mechanism of the said automobile was in a defective and dangerous condition."

At the conclusion of the trial a verdict and judgment were rendered against all defendants for the sum of $45,000.00.

All defendants filed motions for a new trial, which were overruled. This appeal followed.

Numerous errors have been assigned on behalf of the appellants, most of which are not insisted upon. Of the errors relied upon, in most instances, both defendants complain of the same errors, but each appellant argues certain additional errors which, due to the relationship of the parties as shown by the facts, would be available to one but not the other. With respect to such, appellants take the position that if the case is due to be reversed solely on grounds available to one appellant but not to the other, then under established principles, the ends of justice would best be served by a reversal as to all defendants.

The errors relied upon jointly and separately by appellants are substantially as follows:

1. The overruling of demurrers to Count 3C set out above.

2. The refusal of the trial court to grant at the request of defendants the general affirmative charge with and without hypothesis.

3. The refusal of the trial court to declare a mistrial due to claimed improper argument made by counsel for plaintiff and the overruling of objections by appellant to claimed improper argument of plaintiff's counsel.

4. Refusal of written charges bearing on the subject of plaintiff's intestate's contributory negligence.

5. Refusal of the court to give certain written charges requested by defendants which defendants claim presented the law applicable to certain issues raised by pleadings and evidence.

6. Various exceptions to the court's oral charge and the refusal of written requested charges which appellants claim clearly point out the findings necessary to a recovery by plaintiff and which it is contended were not made clear by the oral charge.

7. The overruling of motions for a new trial.

8. The excessiveness of the verdict.

The facts which gave rise to this action, taken from a joint brief filed by appellants and conceded to be correct by appellee, are substantially as follows:

In October of 1957 Frank Dodd owned a 1957 Ford automobile which was insured by State Farm Mutual Automobile Insurance Company, this policy having been acquired through agent Fray Carter in Haleyville, Alabama. This policy contained the following provisions:

"Coverage G—Deductible Collision. To pay for loss to the automobile caused by collision with another object or upset of the automobile but only for the amount of each such loss in excess of the deductible amount stated in the declarations as applicable hereto.

"Limits of Liability—Settlement Options—Coverages D, E, F, and G. The limit of liability for loss to the automobile or part thereof shall not exceed the actual cash value nor what it would then cost to repair or replace the automobile or part with like kind and quality, less depreciation and deductible amount applicable.

"The company may pay for the loss in money, *or may repair or replace the automobile* or such part thereof as aforesaid, or may return any stolen property with payment for any resultant damage thereto at any time before

the loss is paid or the property is so replaced, or may take all or such part of the automobile at the agreed value but there shall be no abandonment to the company." (Emphasis supplied.)

On or about October 29, 1957, the deceased Jack Dodd was riding in his father's automobile on a wet, slippery road, when, while going around a curve, he hit his brakes and slid into a ditch off to the left hand shoulder of the road, resulting in damage to the left front of the insured automobile. The damaged vehicle was towed to Caldwell's Garage in Warrior, Alabama, and on the following morning, Frank Dodd went to the garage to see the car. Upon inquiring, Mr. Dodd was told that a Mr. Tyler was a State Farm Agent in Warrior. Dodd went to Tyler's house and brought him to see the automobile. Dodd told Tyler he did not know anybody in Warrior and asked for Tyler's assistance. Dodd told Tyler he did not know any repair places and Tyler suggested Maring-Crawford Motor Company in Birmingham. Dodd took one of Tyler's cards with Maring-Crawford's address on it, and later called Tyler and told him to go ahead and have the car sent to Maring-Crawford. According to Dodd's testimony, in the interim, he went to Birmingham and talked with someone at Maring-Crawford. In his conversation with Dodd, Tyler told him that "you will have to get another estimate for repairs", and that the matter had been turned over to the State Farm adjuster. Tyler telephoned Maring-Crawford and requested that they send to Warrior and pick up the car.

On the morning of October 30th a State Farm adjuster named Stewart received a report of the accident from Tyler. Stewart called Bradley & Bedsole Body Shop and requested them to make an estimate on the car. Stewart then left Warrior and went to Maring-Crawford, picked up their estimate and went to look at the car. While he was there Mr. Bradley of Bradley & Bedsole came to prepare his estimate. Dodd testified that he went to Maring-Crawford that day and saw an adjuster there but

could not identify him. Stewart testified that he did not see Dodd. The following day Stewart picked up Bradley & Bedsole's estimate. It was some $48.00 lower than Maring-Crawford's.

At this point, the evidence is conflicting. Stewart testified that he called Agent Tyler, told him that Bradley & Bedsole had the low bid and told him to contact Mr. Dodd and have him authorize repairs. Stewart said he heard nothing further until he saw the car at Bradley & Bedsole's a day or so later. Tyler, called as a witness by the plaintiff, stated that he had no authority to authorize repairs, and said that he recalled nothing with reference to where the car was to be repaired. He said he did not tell anyone to move the car and did not know it had been moved until some time later. Bradley testified, however, that he received a call from Tyler authorizing him to pick up the Dodd car and proceed on the repairs. Dodd testified he thought the car was being repaired at Maring-Crawford until he went back about two days later and learned that it was at Bradley & Bedsole's Body Shop. Dodd testified that when he found that his car was not being repaired at Maring-Crawford he called Agent Tyler who told him the car was at Bradley & Bedsole's. Dodd then went to Bradley & Bedsole's and saw his car. He did not instruct Bradley & Bedsole not to repair the car but testified that they had already "torn it down". Dodd then went to Tyler's office and told him that he wanted Maring-Crawford to repair the car and wanted the car sent back to them. Tyler told Dodd that Bradley & Bedsole had "done quite a bit of work for me" and that they had done a good job. The car was left there.

Bradley & Bedsole completed the repair work themselves, but they do not do alignments, and had the front end aligned at Vaughn's Fender and Front Alignment Company. Dodd came by and picked up his car a few days later and paid $50.00 (the deductible amount under his policy). His son Jack was with him. On the trip home and within a few blocks of Bradley &

**416**

Bedsole's, Dodd noticed that the car would dart to the left. It was more noticeable at higher speeds. He discussed with his son that the car did not drive right and started to take it back but as it was nearing his work time he went on to Warrior, a distance of 21 miles. When he got on the highway up to a speed of about 50 miles per hour the car would pull to the left and it did this several times over a space of some 15 miles. As long as he kept the steering wheel tight to the right, it would not pull to the left but when he let slack on it, it then darted to the left. From then on until the last accident, a period of one month, Mr. Dodd drove the car every day to and from work and the car reacted in the same way all the time, continuously pulling or darting to the left. During this period, the plaintiff's decedent, Jack Dodd, drove the car a number of times.

During the month which intervened before the fatal accident, Dodd made two trips to the garage of Bradley & Bedsole in Birmingham to complain of the darting and jerking to the left of his automobile. He registered a complaint with Mr. Tyler, the State Farm agent in Warrior, who suggested that he have new tires put on the car. He had new tires placed on his car at Emerson's Service Station in Warrior on one occasion and had the wheels balanced on another in an attempt to correct the condition; he had the front end aligned by Otho Ward in Haleyville, and switched the wheels around after the car continued to operate improperly. He testified that none of these measures corrected the difficulty.

 Appellant State Farm argues that the trial court erred in overruling demurrers to Count 3C set out above in that there is no allegation of facts establishing a duty on State Farm to repair the automobile in question, and further insists that the trial court erred in failing to give the general affirmative charge with hypothesis on the ground that there was no evidence upon which the jury could base the finding that there was a duty on State Farm to repair the automobile in question. We are unable to agree with this contention. The policy involved contained the provision that "the company may pay for the loss in money *or may repair* or replace the automobile * * *". As we read this language, it gives the company an option either to pay for the loss or repair the automobile. This exact language was so construed by the Michigan Supreme Court in Carter v. State Farm Mutual Automobile Insurance Company, 350 Mich. 535, 87 N.W.2d 105. It is the general rule that where a policy gives the insurer an election to repair or pay, the exercise of the option to repair converts the original contract into a contract to repair, subject of course to various refinements and exceptions. 7 Am.Jur.2d, Automobile Insurance, § 192. The election by the insurer to repair an automobile damaged by collision rather than to pay for the loss or for the value of the car, must be clear, positive, distinct and unambiguous. See 29 Am.Jur., Insurance, § 1699.

 Adhering to its theory that there was no duty to repair the automobile, State Farm contends then that the repairs as made by Bradley & Bedsole were in fact repairs made by an independent contractor for whose negligence State Farm would not be liable. This Court has said, on this subject:

"The general rule is well settled that one is not ordinarily responsible for the negligent acts of his independent contractor. But this rule, as most others, has important exceptions. One is that a person is responsible for the manner of the performance of his non-delegable duties, though done by an independent contractor, and therefore, that one *who by his contract* or by law is due certain obligations to another cannot divest himself of liability for a negligent performance by reason of the employment of such contractor. Montgomery Gas Light Co. v. [Montgomery] & E. Ry. Co., 86 Ala. 372, 5 So. 735; Mayor, etc., of Birmingham v. McCary, 84 Ala. 469, 4 So. 630; Western Ry. of Ala. v. Turrentine, 197 Ala.

603, 73 So. 40; Baker v. [Atlanta] B. & A. Ry. Co., 163 Ala. 101, 49 So. 751; Southern Ry. Co. v. Lewis, 165 Ala. 555, 51 So. 746, 138 Am.St.Rep. 77; 39 Cyc. 1339; Annotation 29 A.L.R. 737, et seq.; 23 A.L.R. 985, et seq.; Republic, etc., v. Barter, 218 Ala. 369, 118 So. 749.

"In this case, if defendant was engaged to transport a party of students on a trip, the law imposed a duty on it to see that it was not done in a negligent manner so as to injure any of them. The defendant could not relieve itself of the responsibility for that duty by engaging the services of a contractor. The duty was to be performed by motorbus service, and the fact that defendant engaged by independent contract one of the busses, in the negligent operation of which plaintiff was injured, did not relieve defendant from liability to plaintiff." Dixie Stage Lines v. Anderson, 222 Ala. 673, 134 So. 23. (Emphasis supplied.)

█ It seems to us, then, that if State Farm elected to repair the automobile, then its duty to do so became a contractual duty and it was bound to use due care in making the repairs, for "When the contract does not in terms require reasonable care in doing the act stipulated to be done, the law imposes a duty—but does not imply a contract—to exercise due care in doing the act; and, therefore, when negligence exists in doing that act an action in tort only is available * * *". Waters v. American Cas. Co. of Reading, Pa., 261 Ala. 252, 73 So.2d 524.

The theory upon which the plaintiff has proceeded in this case is not unique in this state. In Becker Roofing Co. v. Carroll, 37 Ala.App. 385, 69 So.2d 295, the contract contained alternatives, i. e., either to make the roof waterproof, or else to pay a proportionate share in replacing the defective materials. There the Court of Appeals said: "Where a contract provides for alternatives, and an election of one alternative is manifested, all rights as between the parties will attach as from the making of the contract", citing Collins v. Whigham, 58 Ala. 438.

█ While we approve the foregoing authorities, they are applicable to appellant State Farm in this case only if the jury found that State Farm undertook to repair the automobile. And, of course, the insurer State Farm was entitled to have the jury properly instructed on this issue. If the evidence did not reasonably satisfy the jury that State Farm undertook to repair plaintiff's automobile as alleged in the complaint, then there could be no recovery against the insurer under the complaint as framed. For the court's refusal to instruct the jury in this regard, we entertain the view that the case must be reversed and remanded. Appellant State Farm requested the following charge which was refused:

"4. The Court charges the jury that if you are reasonably satisfied from the evidence that the defendant, State Farm Mutual Automobile Insurance Company did not undertake to repair the damage to plaintiff's automobile as alleged in the plaintiff's complaint, then I charge you that you cannot return a verdict in favor of the plaintiff and against the defendant, State Farm Mutual Automobile Insurance Company, a corporation."

The court's oral charge seems to presume that if Bradley and Bedsole were liable, then the insurer was liable. The court failed to make a distinction between the separate defendants, charging as follows (to which exceptions were taken by each defendant):

"It is the law that if the automobile repairers knew, or by the exercise of reasonable care should have known that the automobile was defective by reason of his negligence, when delivered to its owner, and if said automobile was in fact defective by being negligently repaired as charged in the complaint in this case, and that the deceased was killed as a direct and proximate con-

sequence of the alleged negligence of the automobile repairer in making such repairs, then it would be a case of liability."

At another point in the oral charge, the Court went on to say:

"Now, then, gentlemen, after a full and fair consideration of all of the evidence in the case you should find a verdict in favor of the plaintiff and against the defendants, and I say to you now when I use defendants, that means, of course, all of the defendants, you would not be authorized in this case to bring in a verdict against only one of the defendants, and a verdict in favor of the other."

After exceptions to the last quoted portion of the charge, the court attempted to withdraw the same, by stating to the jury:

"I stated to you in effect, I am not sure I am quoting the words exactly, you could not return a verdict against one defendant without returning a verdict against both defendants. I made a statement to that effect, I am going to retract that statemen, gentlemen, from you, for what I consider a legal, valid reason. For that reason, I am going to charge you that if you are reasonably satisfied from the evidence in the case that Bradley-Bedsole repaired this automobile *without any authority* and negligently repaired it as charged in the complaint, then you could return a verdict in favor of the plaintiff and against Bradley-Bedsole without returning a verdict against State Farm Automobile Insurance Company." (Emphasis supplied.)

We believe that the last quoted portion of the court's charge failed to cure the defect apparent in that portion quoted just above. We agree with appellant State Farm that under the complaint as framed, the issue was not whether Bradley-Bedsole had authority to repair the automobile, but whether State Farm undertook and did repair the automobile, making Bradley-Bedsole its agents for this purpose. As we read the court's charge it left no possibility that State Farm could be exonerated by the jury on the basis that it did not undertake the repairs of the automobile. Clearly this was error to reverse. A party is entitled to have his theory of the case made by the pleadings and issues presented to the jury by proper instructions. Calvert v. Bynum, 255 Ala. 172, 50 So.2d 731. It is the law that "[w]here one defendant is alleged to have been agent of other defendant in doing acts in scope of his employment, judgment may be rendered against alleged agent and in favor of alleged principal on theory that there was failure to prove agency, but where only claim of liability of principal is breach of duty by alleged agent, judgment in favor of agent and against principal would be inconsistent and not permissible." Downes v. Norrell, 261 Ala. 430, 74 So.2d 593.

 Since this is the view we take of this case, there is no necessity that we consider further assignments of error relied upon by appellants for reversal. However, for the guidance of the learned trial court on the retrial of the case, we direct his attention to the statement made in Foster & Creighton Co. v. St. Paul Mercury Indemnity Co., 264 Ala. 581, 88 So.2d 825, where it is stated at page 832 on the subject of plaintiff's contributory negligence:

"The three elements essential to contributory negligence * * * are that the party charged with contributory negligence not only (1) had knowledge of the condition or failure, yet (2) appreciated the danger under the surrounding conditions and circumstances and did not (3) exercise reasonable care in the premises, but with such knowledge and appreciation, put himself into the way of danger."

To be sure, the question of a plaintiff's contributory negligence is ordinarily a question of fact to be determined by the jury, but

defendants are entitled to have the jury properly and clearly instructed as to the law on the subject.

Reversed and remanded.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.