388 So.2d 927 (1980)
James R. WINCHESTER
v.
McCULLOCH BROTHERS GARAGE, INC. et al.
78-754.
Supreme Court of Alabama.
September 26, 1980.
*928 J. G. Speake of Speake, Speake & Reich, Moulton, for appellant.
W. H. Rogers, Moulton, for appellees American Motors Sales Corp., American Motors Corp. and Jeep Corp.
TORBERT, Chief Justice.
This is a breach of warranty case under the Alabama version of the Uniform Commercial Code. The facts in this case are stated in the dissenting opinion of Mr. Justice Faulkner and need not be repeated.
Code 1975, §§ 7-2-316(4), -719(1), provides that a seller may contractually limit his buyer's remedies for breach of warranty. The warranty given by the defendants in this case was the type typically giventhe vehicle warranty expressly limited the buyer's remedy to repair or replacement of defective parts and disclaimed liability for incidental and consequential damages. As a result of the limitation sanctioned by § 7-2-719, the jury must find that the limited warranty failed of its essential purpose before it can proceed to award damages other than as provided in the limited warranty. See Code 1975, § 7-2-719(2).
Since testimony revealed that the cost to repair the Jeep was around $1,200, we believe it apparent from the damages awarded that the jury concluded the warranty failed of its essential purpose. Furthermore, we find the facts reasonably support the jury's conclusion. Where a seller refuses to honor its own limited warranty, that warranty may properly be found to fail by reason of § 7-2-719(2).
Because the jury presumably found the contractual remedy ineffective, the buyer is entitled to other remedies provided in the Code. Code 1975, § 7-2-714(2), (3), sets down the general rule in breach of warranty cases:
(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount, and nothing in this section shall be construed so as to limit the seller's liability for damages for injury to the person in the case of consumer goods. Damages in an action for injury to the person include those damages ordinarily allowable in such actions at law.
(3) In a proper case any incidental and consequential damages under section 7-2-715 may also be recovered.
Id.
According to the statute, damages are normally the difference between the value of the goods as warranted and the value as delivered, plus incidental and consequential damages.
The purchase price is evidence of the value of the goods as warranted. See, *929 Thompson Chrysler-Plymouth, Inc. v. Myers, 48 Ala.App. 350, 264 So.2d 893 (Civ. App.1972). However, it is often difficult to ascertain the value of the goods as delivered. For this reason, where the goods are repairable, cost to repair is a useful measure of the difference in values. See J. White & R. Summers, Handbook of The Law Under The Uniform Commercial Code § 10-2 (1972).
Under the authority of §§ 7-2-714(3), 715, plaintiff buyer may also claim consequential damages. Evidence adduced at trial shows the plaintiff spent $1,000 for an expert witness. Here, however, expenses of trial preparation are not consequential damages. See, Murray v. Holiday Rambler, Inc., 83 Wis.2d 406, 265 N.W.2d 513 (1978). See also, State v. Alabama Public Service Commission, 293 Ala. 553, 574, 307 So.2d 521, 540 (1975).
Plaintiff also produced evidence that the reasonable rental value of an automobile was $15 per day, but plaintiff did not rent an automobile. He borrowed an automobile for two days, and then he purchased a substitute means of transportation. Although the plaintiff's purchase of the replacement automobile may have been more than was reasonably required at the time, plaintiff chose to buy the substitute car. Recovery for consequential damages is allowed only to the extent the buyer suffers actual damage, and since the plaintiff borrowed, then bought, another car, the rental cost of a substitute car is not an item of damage. See, Murray v. Holiday Rambler, Inc., 83 Wis.2d 406, 265 N.W.2d 513 (1978).
Applying the foregoing rules to this case, it is apparent the jury verdict was excessive. We recognize the amount of damages is left largely to the jury, but the jury may not ignore the statutory standards by which to measure plaintiff's damages. In the unlikely event the truck could not be repaired and had no salvage value, the difference in the value of the truck as accepted and its value as warranted can be no more than $8,225, the cost of the truck. Since no includable consequential damage was shown, the total award could not exceed $8,225, and the jury award of $20,000 was certainly improper. See, Riley v. Ford Motor Co., 442 F.2d 670 (5th Cir. 1971).
The trial judge recognized the impropriety of the jury award and ordered a new trial unless the plaintiff consented to remittitur. Under the facts, his order was undoubtedly not an abuse of discretion. The order is due to be affirmed.
AFFIRMED.
MADDOX, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
FAULKNER, J., with whom JONES, J., concurs, dissents.
FAULKNER, Justice (dissenting).
This is an appeal from a judgment of the Circuit Court of Lawrence County granting a motion for new trial unless Winchester remitted $15,100 of a jury verdict of $20,000 damages awarded him in a suit for breach of warranty of a Jeep motor vehicle. I would reverse and render.
In February, 1978, James Winchester traded a 1978 Chevrolet four-wheel drive vehicle with one of the McCulloch brothers, owners of McCulloch Brothers Jeep dealership in Decatur, for a 1978 Jeep Honcho vehicle. He paid, in cash the day of the sale, the difference in price between the two vehicles, $485.00. This vehicle was used to drive back and forth to work each day, a trip between Hillsboro and Decatur. Mr. Winchester owned no other automobile.
On March 4, while driving the Jeep, having only 692 miles on it, Winchester felt a hard jolt and the Jeep fell down in the rear. It pulled to the left-hand side of the road and ran off the road into a ditch and hit a mailbox. He finally got it straightened up and went directly up the ditch. While the Jeep was being removed by the wrecker, he noticed that the rear leaf spring on the driver's side had broken completely loose from where it was attached to the frame and was hanging loose. The drive shaft had come out of the Jeep, having been broken at the universal joint and having slipped out of the transmission. The vehicle *930 was taken to Moulton and after McCulloch Brothers was called and Hoss McCulloch was told of the problem, the Jeep was taken to McCulloch Brothers dealership. After talking with McCulloch Brothers later, he was told the North Alabama adjuster had told them not to fix the Jeep. He called the adjuster in Nashville and the factory in Detroit and received no satisfaction. Two days after this incident in which the Jeep was wrecked Winchester purchased a 1975 car and paid $2,556.00 for it in order to have a car to drive to work. Rental cost of a car would have been $15.00 a day and at the time of the trial, 435 days after the wreck, rental could have been $6,525.00.
On May 18, Winchester filed suit against the McCulloch Brothers, AMC, American Motors Sales Corporation, and Jeep Corp., for breach of warranty. The complaint was later amended to include a count under the Alabama Extended Manufacturers Liability Doctrine. At trial Winchester presented expert testimony that the leaf spring was defectively made. The jury returned a verdict for Winchester in the amount of $20,000.00. Defendants filed a motion for new trial and in the alternative for judgment notwithstanding the verdict, asserting that the excessive verdict exhibited bias against the defendants and the damages were not supported by the evidence. The trial judge ordered a remittitur as to all defendants in the amount of $15,000.00 or a new trial. Winchester initially accepted the remittitur, believing the amount remitted was to be $4,900.00, but later struck consent to the remittitur and appeals.
The sole issue before this Court is whether the trial judge abused his discretion by ordering the remittitur.
The evidence shows the following proof relating to damages: Winchester purchased the Jeep for $8,225.00. To pay this, he traded in a Chevrolet, and paid $485.00 cash. Two days after the accident, Winchester bought another automobile for $2,556.00. He introduced evidence that the fair rental value of a vehicle was $15.00 per day, and he claimed loss of 435 days $6,525.00. The cost to repair the Jeep was estimated to be $1,200.00. (It was never repaired.) Winchester paid a metallurgist $1,000.00 to testify as an expert witness at the trial.
Section 7-2-714, Code 1975, provides that the measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted, and the value they would have had if they had been as warranted. Here, the only evidence presented as to the value of the Jeep when accepted was its purchase price. The Court of Civil Appeals held that the purchase price of personal property is admissible as going to the value of the property, and in the absence of other evidence, it is sufficient. Becker Roofing Co. v. Carroll, 37 Ala.App. 385, 69 So.2d 295 (1953); Thompson Chrysler-Plymouth, Inc. v. Myers, 48 Ala.App. 350, 264 So.2d 893 (1972). In Riley v. Ford Motor Company, 442 F.2d 670 (1971), the Fifth Circuit permitted evidence of purchase price as going to the value, but there the owner testified that the property made the basis of a breach of warranty action was useless to him.
Because there was no evidence of value introduced other than the purchase price of the Jeep, we take that as a starting point to assess damages. The purchase price was $8,225.00, and it was obviously useless in its present condition at the time of the trial. In fact it was sitting on jacksnone of the defendants would agree to repair it. Therefore, I would find that the purchase price is an element of damages. Next, Winchester, when he had no automobile to go to his place of employment, had to buy another vehicle as a substitute means of transportation. I opine that this is another element of damages. Cf. Riley, where substitute transportation was permitted as an element of damages.
I would hold that Winchester's damages should be $10,781.00 instead of $4,900.00 as found by the trial judge. With this award he would be placed in the same economic condition as he was in at the time he purchased the Jeep.
JONES, J., concurs.