The original opinion in this case is withdrawn and the following opinion is substituted therefor.
This appeal arises from a jury verdict in favor of plaintiffs-appellees awarding damages for negligent failure to procure fire insurance. We reverse and remand.
George W. Baker and his wife conveyed 923 acres by vendor's lien to Eastern Freight Forwarders, Inc., in February 1977. Eastern Freight Forwarders subsequently conveyed the 923 acres, subject to the vendor's lien, to Loper Timberlands, Inc. Loper Timberlands obtained a release of forty acres from the vendor's lien in May 1978.
Loper Timberlands built a hunting lodge on the forty-arce tract of land in Perry County in the summer of 1978. The 900-square-foot lodge was constructed to the same standards as a residence, with a living room, den, two bedrooms, two bathrooms, patio, and storage shed, and was fully furnished.
On June 1, 1978, the forty acres was mortaged to the trustees of Federal Union Real Estate Investment Trust ("Trust") to secure a note in the sum of $40,000. It is not clear whether the hunting lodge was in existence at the time of the mortgage. Loper Timberlands conveyed this forty acres and lodge, along with the 883 other acres still subject to the vendor's lien, to Jericho Plantation, Inc., by deed dated August 10, 1978. Jericho Plantation defaulted in its payments, and the vendor's lien was foreclosed on the other 883 acres. It is unclear whether Jericho Plantation later quitclaimed the entire property, including the forty-acre tract with the lodge, to Eastern Freight Forwarders in exchange for extinction of the mortgage, or whether a mere statutory right of redemption regarding the foreclosure of the other 883 acres was assigned.
Sometime around March 1980, Belton Loper, president of both Jericho Plantation and Loper Timberlands, and Harry Hardy, attorney for the Trust and president of *Page 344 
Eastern Freight Forwarders, went to the Alabama Farm Bureau office in Marion, Alabama, to obtain fire insurance on the lodge and its contents. The insurance agent, Joe Horne, was not in the office, so they advised the secretary they wished to insure the building for $30,000, and its contents, which belonged to Belton Loper and his brother Mark, for $5,000. Mr. Hardy testified he told her the Trust was the mortgagee and he asked her to have the original copy of the policy sent to him, and the bill sent to Loper. They gave the secretary the location of the property, and she told Hardy that the agent, Joe Horne, would process the request and get the policy to him.
A few days later, Mark Loper, secretary-treasurer of Jericho Plantation and full-time resident of the lodge, went to the Farm Bureau office and talked with Joe Horne about the insurance. Mark testified Horne said he had all the information he needed, but he had to see the property. Horne said he would call Mark to set up an appointment to inspect and photograph the lodge.
After a few more days, Belton Loper called Horne to find out when he intended to visit the property. Horne told him no payment was necessary at that time and all Horne needed to do was to go to the property and ascertain the buildings did exist and their value was in line with the amount of insurance requested. Horne later called Mark and made an appointment to inspect the premises the next morning. Mark waited all day, but Horne did not show up. A second appointment was later made by Horne to see the property, but again he never arrived.
Belton Loper then called Horne to find out why he had not yet seen the property. Belton testified Horne said he had been "snowed under" but "kept insisting" he would inspect the property. No binder was ever issued by Horne. On May 10, 1980, about three days after the last telephone conversation and approximately six weeks after the initial visit to Farm Bureau's office, the lodge burned to the ground. Belton called Horne, who denied coverage with words to the effect of "tough luck."
Jericho Plantation, the Lopers, and the Trust as mortgagee sued Alabama Farm Bureau for its agent's negligent failure to procure insurance. The jury found for the plaintiffs and awarded $30,000 damages. Alabama Farm Bureau appeals.
Farm Bureau contends the trial court below erred in failing to charge the jury on the issue of contributory negligence. We agree and reverse.
Farm Bureau's amended answer to the complaint set forth the affirmative defense of contributory negligence. In addition, the record shows Farm Bureau requested jury charges on contributory negligence, which the trial court refused. The rule is that a party is entitled to have his theory of the case, made by the pleadings and issues, presented to the jury by the proper instructions, State Farm Mutual AutomobileInsurance Co. v. Dodd, 276 Ala. 410, 162 So.2d 621 (1964), and the court's failure to give those instructions is reversible error. Liberty National Life Insurance Co. v. Smith,356 So.2d 646 (Ala. 1978).
A plaintiff's contributory negligence is ordinarily a question of fact for the jury. State Farm, supra. The record shows that the trial court refused to give the charge because there was "not one scintilla of evidence of contributory negligence." Harry Hardy, acting for the mortgagee Trust, took no further action to procure insurance after his initial visit with Belton Loper to the Farm Bureau office, some six weeks before the fire. Days elapsed from the time Belton and Mark Loper each contacted Horne until the time of the fire. While we do not say that these facts constitute contributory negligence, they are some evidence of contributory negligence, and, therefore, the jury should have been so charged. The record shows the trial court even admitted there might have been some evidence of contributory negligence:
 "My thinking is still that there is not one scintilla of evidence of contributory negligence; *Page 345 
on the other hand I may be wrong. And there may be something that can be inferred from the circumstances. And I suspect if you have five folks to think about it you would get five different opinions. . . ."
We therefore reverse and remand for a new trial.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; REHEARING DENIED; REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON, SHORES, BEATTY, and HOUSTON, JJ., concur.
MADDOX and JONES, JJ., recused.