BEATTY, Justice.
Appeal by plaintiff, Margaret A. Allen, from a summary judgment in favor of defendants, Max Knotts and Fred Whitmer, in plaintiff’s action to recover damages for personal injuries sustained in her employment. We affirm.
The facts of this case are set forth in Allen v. Knotts, 514 So.2d 955 (Ala.1987), to which reference should be made. Insofar as that opinion bears upon the issue before us in this case, we held there that the defense of contributory negligence on the part of plaintiff Allen had not been properly raised. 514 So.2d at 957. Thus, as to the defendants here, Knotts and Whitmer, the case was remanded for further proceedings.
Thereafter, on October 6, 1987, Knotts and Whitmer filed their answer, pleading the defense of contributory negligence, and again moved for summary judgment based upon the pleadings and the depositions of Margaret A. Allen, Max Knotts, and Fred Whitmer. Those depositions support the statement of the facts given in Allen, supra, at 956, concerning the plaintiff’s accident:
“Margaret A. Allen fell while attempting to gain entry into a 40-foot storage trailer. The trailer was leased to Wal-Mart, Ms. Allen’s employer, by defendant Madison Mobile Storage, Inc., ... and was parked outside Wal-Mart Store No. 712. Ms. Allen was assistant manager of Store No. 712. The trailer was used to store merchandise for a sidewalk sale. In the process of setting up the sidewalk sale, Ms. Allen attempted to enter the rear of the trailer to help a stockman who was in the trailer locating merchandise. There were no steps or ladder providing access to the trailer, and Ms. Allen could not step up into the trailer. She grasped a chain (placed on the trailer door by Wal-Mart for security purposes) to help hoist or steady herself as she attempted to climb into the trailer. The chain came loose from the door handle and Ms. Allen fell to the parking lot and sustained personal injuries.”
Plaintiff’s claim against these defendants was that Knotts, the store manager, and Whitmer, the district manager, were negligent or wanton in their control of the conditions, methods, and manner of plaintiff’s work that resulted in her injuries. The defendants deny any breach of duty owed to plaintiff, the assistant manager, and also maintain that plaintiff was negligent as a matter of law. See Fontenot v. Bramlett, 470 So.2d 669 (Ala.1985).
As plaintiff described the events leading up to her injury, she was told by the store manager that the store would have a sidewalk sale and, together with Mr. Knotts, she was to prepare an inventory of the merchandise to be offered at that sale:
“A. Okay. I went to work that morning and we was setting up a sidewalk sale *814 and I unlocked the trailer for the stockman to go up in there to get the merchandise off and he could not locate what we were wanting off the trailer so I was going up in there to show him where it was at and help him get it off the trailer and that is when I fell.
“Q. Could you describe for me exactly how the accident took place? What you were doing immediately before you fell and during the time you were falling and after you fell?
“A. Well, like I said, there was — one of the doors was open, you know, they have got the double doors, just one of them was open and the handle on the left side I guess you would say the left side if you were looking at it like this a chain was looped over the handle and I saw that. I could not step up to get into the trailer like the stockman did so I turned around to pull myself up by the chain and it all happened so quickly, the next thing I knew I was falling.
“Q. Were these doors that opened like regular doors into a room or did they open up?
“A. No, they opened like going into a room.
“Q. And they had double doors?
“A. Yes.
“Q. And you tried to pull yourself up. with a chain that was looped around part of the door; is that correct?
“A. No, the handle.
“Q. The handle?
“A. Yes.
“Q. Where was the handle located in relationship to the door?
“A. It’s not all the way up. It’s not way up high on the door. It’s down not too far from the guard where they back up to the docks.
“Q. Could you describe the handle for me?
“A. Describe it?
“Q. Yes.
“A. It is just an ordinary handle that is attached here and it goes over and it attaches down there.
“Q. It is not like a door handle?
“A. Like a doorknob?
“Q. Doorknob.
“A. No, no it’s a handle.
“Q. How do you open the door with a handle? What procedure do you use?
“A. Well, first we had to unlock it because it had the master lock on it and then the stockman is the one that removed the chain and looped it over the handle of the left door and pulled the right door open where he could get up in there.
“Q. Were you present when he did that?
“A. Yes, I was standing there watching him.
“Q. You saw him do that?
“A. Yes.
“Q. You were aware at that time that the chain was not connected to the trailer; is that correct?
“A. Well, when I started up in there, you know, I thought it was secure enough for me to grab a hold of it enough to get up in the trailer.
“Q. But you were aware that the chain was not made attached to the trailer; is that correct?
“A. True.
“Q. It was just a loose piece of chain; is that correct?
“A. Right.
“Q. And you observed, I believe you said, the stockman wrap the chain around the handle; is that correct?
“A. Yes.
[[Image here]]
“Q. Do you have any recollection of how people usually got into the trailer that you observed get into the trailer?
“A. Like I said, the stockmen usually use that guard that is on the trailers, when they back up on the loading dock, they put their foot there and climb on up in the *815 trailer. But it was too high, I could not step up that high because I tried it.
“Q. Did you seek any assistance from anyone before attempting to get in the trailer?
“A. No, sir, I did not.
“Q. I believe you said the stockman was in the trailer at the time you attempted to get in it.
“A. Right. Yes, sir, he was.
“Q. Were there any ladders available in the store which you could have used to get in the trailer?
“A. Not the type that you could use to go into a trailer. There was ladders, but not the type that could be used.
[[Image here]]
“Q. As part of your duties and responsibilities with Wal-Mart, could you have directed other employees to assist you in getting the merchandise?
“A. No, sir, I could not. When the door is open like that, a member of management has to stay there with the door when it is open, the back door and the trailer door.
“Q. When you went to the trailer, you could have directed someone to go with you, including the stockboy; is that correct?
“A. You talking about other than a stockboy?
“Q. Anyone else in the store.
“A. No, sir, not really because it was not that many working and they had their own jobs to do, you know. In other words, there was really no one available.
“Q. What I am saying is if you felt that you needed help in getting merchandise out of the trailer, did you have the authority to get someone to help you?
“A. Yes, sir, I had the authority.
[[Image here]]
“Q. What do you claim that Mr. Knotts did that he should not have done which caused or contributed to your accident and injuries?
“A. Well, gee. Well, it is definitely unsafe because there was no means of any way to get into the trailer. It is very unsafe.
“Q. Anything else that he did? What do you claim that Mr. Knotts did or did not do that caused or contributed to your accident and injuries?
“A. Well, if we had had a couple of stockmen there, I would not have went into the trailer. I would have sent another stockman in there in order to help the other guy to get all that down.
“Q. Anything else?
“A. Not that I can think of, no, sir.
[[Image here]]
“Q. What means do you feel should have been provided to enable you to get in the trailer?
“A. Well, if we had had a ladder or step stool anything of that nature where you could keep your complete balance in order to get up into the trailer.
“Q. Is your testimony under oath there was not a ladder or step stool in the Wal-Mart store which you could have used to get in that trailer?
“A. Oh, sure, there are ladders in the store but whether they are the right kind for that trailer though that I cannot answer. I don’t know.
“Q. Well, did you have the authority as an assistant manager of Wal-Mart to get a ladder or step stool out of the store to assist you in getting in the trailer?
“A. Well, really I did not think about it because we had x amount of minutes to get that sidewalk set up before—
[[Image here]]
“A. Okay. Before the store opened and so I thought I was going to be secure enough with the chain to get up into the truck or the trailer rather.
“Q. My question was, as the assistant manager of Wal-Mart on that occasion, did you have the authority to get a ladder or stool to assist you in getting in the trailer?
“A. Yes, sir.
“Q. Did you have the authority as assistant manager of Wal-Mart to get someone else to get in the trailer?
*816 “A. Yes, sir, I would think I did but I don’t know whether they would — I mean it was mostly females there that morning, not males.
“Q. You did not have any other males there other than Mr. Knotts and the gentlemen in the trailer?
“A. We are talking early in the morning and I think that is the only one.
“Q. Do you know that for a fact?
“A. I said I am thinking that is the only two. I did not see any more except those two, I will put it that way.
“Q. Did you have the authority to ask Mr. Knotts to assist you in getting in the trailer?
“A. Well, sure. Yes, sir.
“Q. Did you test this chain in any way before you grabbed it to see if it was secure?
“A. No, I did not. Like I said, the way it was looped over the handle I thought it was secure enough to get me into the trailer.
[[Image here]]
“Q. Was there something unusual or peculiar about the sidewalk sale?
“A. No, we had them quite often.
“Q. ... What are you claiming that Mr. Adams[1] did or did not do that caused or contributed to your accident and your injuries?
“A. Well, he did decide that it was time for a sidewalk sale. That was first knowledge of a decision that was made was by him to have a sidewalk sale [sic].”
While not conceding any breach of their duty to provide plaintiff with a safe place to work, defendants insist that plaintiff herself was guilty of contributory negligence in causing her own injuries, as a matter of law. The test for that principle was expressed in Hatton v. Chem-Haulers, Inc., 393 So.2d 950 (Ala.1980):
“Contributory negligence requires a finding that the party charged has (1) knowledge of the condition; (2) an appreciation of the danger under the surrounding circumstances; and (3) a failure to exercise reasonable care by placing oneself in the way of danger. State Farm Mutual Auto. Ins. Co. v. Dodd, 276 Ala. 410, 162 So.2d 621 (1964); Mackintosh Co. v. Wells, 218 Ala. 260, 118 So. 276 (1928).
“The burden of proving contributory negligence and that it proximately caused the injury is on the defendant, and a determination of the existence of contributory negligence is for the jury where there is a scintilla of evidence to the contrary. Elba Wood Products, Inc. v. Brackin, 356 So.2d 119 (Ala.1978).
“The question of whether the plaintiff is guilty of contributory negligence is a matter of law, and therefore one for the court to decide, only when the facts are such that all reasonable people must draw the same conclusion, and the question is for the jury when, under all the facts and circumstances, reasonable minds may fairly differ upon the question of negligence vel non. Elba Wood Products, Inc. v. Brackin, supra; Baptist Medical Center v. Byars, 289 Ala.713, 271 So.2d 847 (1973).”
Under plaintiffs own testimony, her contributory negligence was established. It is clear that she had personal knowledge of the condition that caused her fall, because she had witnessed the stockman wrap the chain around the handle and she knew that the chain was loosely placed upon the handle and was not attached. It is clear, too, that she appreciated the danger, because, she testified, “It is definitely unsafe because there was no means of any way to get into the trailer,” even though the stock- *817 boy had no apparent difficulty in entering it. Having the authority to seek assistance, nevertheless, she chose to pull herself up by the unattached chain. Under those circumstances, plaintiff must be held guilty of proximately contributing to her own injury by her own negligence. Cf, Newton v. Creative Dining Food Systems, Inc., 492 So.2d 1011 (Ala.1986); Duffy v. Bel Air Corp., 481 So.2d 872 (Ala.1985); Brown v. Piggly-Wiggly Stores, 454 So.2d 1370 (Ala.1984).
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.

 Any possible liability of Mr. Bill Adams, a Wal-Mart executive, was not made an issue on this appeal.
Of course, it is a familiar principle that summary judgment can be granted only when it is shown by the movant that no genuine issue of fact exists and that the movant is entitled to a judgment as a matter of law. That is to say, if a scintilla of evidence exists in favor of the opponent of the motion, summary judgment is inappropriate. Rule 56(c), A.R.Civ.P. Bell v. Hart, 516 So.2d 562 (Ala.1987).