920 So.2d 832 (2006)
William and Delia DREW, Appellants,
v.
MOBILE USA INSURANCE COMPANY, Appellee.
No. 4D04-4761.
District Court of Appeal of Florida, Fourth District.
February 22, 2006.
*833 Julie H. Littky-Rubin of Lytal, Reiter, Clark, Fountain & Williams, LLP, West Palm Beach, and Eric H. Luckman of Eric H. Luckman, P.A., Boynton Beach, for appellants.
Glenn H. Malin of Peterson Bernard, Fort Lauderdale, for appellee.
POLEN, J.
Appellants, William and Delia Drew, timely appeal a final summary judgment in a dispute over the parties' insurance coverage. For the reasons explained herein, we reverse, finding genuine issues of material fact precluding summary judgment, and remand this case to the trial court for further proceedings consistent with this opinion.
In 2002, the Drews discovered a roof leak which allowed water intrusion into their home. Shortly thereafter, they discovered extensive mold growth in their home. The Drews notified their insurance company, Mobile USA, of the water damage and mold contamination.
The Mobile USA homeowners policy contained a provision allowing Mobile USA to perform the repair work itself, if it so chose. As the provision states:
9. Our Option. If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.
The Drews allege that Mobile USA chose to exercise its option to repair, and it employed several individuals and entities to perform environmental testing services and to estimate the cost of remediating and repairing the Drews' home and property. Mobile USA hired Indoor Environmental Technologies, Inc. to inspect and test the Drews' home. The company prepared a report for Mobile USA which recommended protocols and procedures to be followed in remediating, or removing the mold.
*834 However, the facts in the instant case are in conflict as to who selected the repair company, Insurance Damage Repair, to remediate the Drews' home and personal property. The affidavit of Susan Scott, a Mobile USA senior claims adjuster, states that after Mobile USA investigated the loss and retained an engineer to inspect the premises, it suggested two mold remediation firms to the Drews and that "[t]he Drews subsequently chose Insurance Damage Repair to perform the remediation." In contrast, Delia Drew submitted an affidavit asserting that it was Mobile USA who selected Insurance Damage Repair. She specifically stated that neither she nor William Drew were ever advised that they had a right to select an environmental or remediation company of their choice.
By October 2002, Mobile USA advised the Drews that remediation was successfully completed. The Drews then hired their own environmental consultant, whose inspection determined that the remediation had not been successful and revealed the continued presence of mold. Again, a genuine issue of material fact exists regarding this issue. According to Susan Scott's affidavit, the Drews had knocked holes in certain walls not included in the original repair areas and found additional mold. An engineer hired by Mobile went back to the Drews' home and prepared another estimate which placed the Drews' damages over and above their policy limits.
Mobile USA then determined that the cost of further remediation and subsequent repair of the Drews' home, as well as the cost of additional living expenses, exceeded the remaining policy limits available under the Drews' insurance policy. In May 2003, Mobile USA tendered the remaining policy limits under the Dwelling, Personal Property and Additional Living Expense coverages.
The Drews then filed a two-count complaint against Mobile USA, alleging breach of contract and breach of fiduciary duty. Mobile USA moved for summary judgment, arguing that it already paid out the full benefits of the insurance policy to the Drews and therefore cannot be held liable for any damages above the policy limit, absent a showing of bad faith.
At the hearing on the summary judgment motion, the Drews' counsel stipulated that no bad faith had occurred on the part of Mobile USA. The trial court granted Mobile USA's motion for summary judgment, ruling that as a matter of law no theory of recovery would support the damages being sought by the Drews. The court held that, because there was no showing of bad faith and no material issue of fact that the policy limits were met, there were no grounds for exceeding the policy limits.
"The standard of review governing a trial court's ruling on a motion for summary judgment posing a pure question of law is de novo." Major League Baseball v. Morsani, 790 So.2d 1071, 1074 (Fla. 2001). See also Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000) (stating that a grant of summary judgment is reviewable de novo, and that summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law).
First, as explained above, we hold that there are genuine issues of material fact which preclude summary judgment, namely, who selected the repair company to conduct the mold remediation and whether the additional mold discovered by the Drews' consultant was from certain walls not included in the original repair areas.
*835 We feel it necessary to also address the applicability of Travelers Indemnity Co. v. Parkman, 300 So.2d 284 (Fla. 4th DCA 1974), and Arch Roberts & Co. v. Auto-Owners Insurance Co., 305 So.2d 882 (Fla. 1st DCA 1974), to the issue of whether Mobile USA can be liable for damages above its policy limits flowing from a breach of its contract to repair. While Travelers and Arch Roberts are both automobile insurance cases, we find their holdings instructive as to the circumstances of this case.
In Travelers, the insureds notified their automobile collision insurer of an accident damaging their insured automobile. The insurance company exercised the right given to it by the policy to make repairs, selected the repair company to do the work, and directed the insureds as to where to take the vehicle to be repaired. The vehicle remained in possession of the repair company for fourteen months until the insurance company paid for the repairs. The insureds sued the insurance company for loss of use of the car during the fourteen months it remained in the possession of the repair company. On appeal, the insurance company argued that, absent a provision in the policy providing coverage for loss of use, such consequential damage is not recoverable in a suit for breach of contract. We disagreed, holding that where the insurer elected to repair, the insured could recover damages for loss of use of the automobile proximately caused by the failure to repair it within a reasonable time, even though there was no coverage in the policy for loss of use. Significantly, this court held that "when the insurer makes its election to repair, that election is binding upon the insured and creates a new contract under which the insurer is bound to restore the vehicle within a reasonable time." Id. at 285 (emphasis added). Where the insurer breaches this new contract to repair, it becomes liable for the damages proximately caused by this breach. Thus, this court allowed the insureds to recover damages outside of the scope of the policy in their breach of contract claim, even though the insurer was not alleged to have acted in bad faith. See also State Farm Mut. Auto. Ins. Co. v. Dodd, 276 Ala. 410, 162 So.2d 621, 626 (1964) ("It is the general rule that where a policy gives the insurer an election to repair or pay, the exercise of the option to repair converts the original contract into a contract to repair, subject of course to various refinements and exceptions.").
In Arch Roberts, the insurance company elected under the policy the option to repair the insured's vehicle. This court held that, "[u]pon making that election it was then obligated to restore it to substantially the same condition as to function, appearance and value as existed before the accident. Should it fail to do so, it would then be liable to the owner for its value immediately prior to the accident." Id. at 884. While Arch Roberts did not discuss policy limits, there is also no indication in this court's holding that the insurer's obligation to restore the vehicle to pre-accident condition upon electing to repair would be limited by the extent of the policy limits. See also Siegle v. Progressive Consumers Ins. Co., 819 So.2d 732, 739 (Fla.2002) ("If, as here, the repair option was chosen, the insurer's liability was limited to the monetary amount necessary to repair the car's function and appearance, commensurate with the condition of the auto prior to the loss.").
However, genuine issues of material fact still exist as to whether Mobile USA and the Drews created a new contract to repair. Following the analysis of Travelers and Arch Roberts, if under the insurance contract provision Mobile USA decided to exercise its option to repair, Mobile *836 USA would have created a new contract. This new contract would necessarily require Mobile USA to restore the house to substantially the condition existing before the damage occurred, within a reasonable time. In Travelers, this court held that a new contract to repair was created where the insurer elected the option to repair, selected the repair company, and directed the insureds to use the services of the repair company the insurer selected. As explained above, the parties have submitted conflicting affidavits as to who selected the repair company that undertook the mold remediation. Additionally, under this breach of contract theory, the issue of whether Mobile USA breached its "new contract" to repair is an issue of fact for the jury to determine.
Finally, although we do not reach the issue of damages arising if they are successful in their claim for breach of new contract to repair, we note that there are outer limits to such a recovery. For instance, although mold damage might be so extensive as to virtually infest an entire house, even if a new contract to repair existed, it may well be that the Drews would not be entitled to recover from Mobile USA the value of knocking down their house and building a new one in its place. We express no opinion as to the final result on damages, leaving it to the trial judge to decide during the presentation of evidence at trial.
In conclusion, material issues of fact remain as to whether Mobile USA and the Drews created a new contract to repair, including who selected the repair company to conduct the mold remediation and whether the additional mold discovered by the Drews' consultant was from certain walls not included in the original repair areas. If a new contract to repair was formed, the issue of whether Mobile USA breached its "new contract" is an issue of fact for the jury to determine. For the foregoing reasons, we reverse the Order Granting Summary Judgment and Final Judgment in favor of Mobile USA and remand this case to the trial court for further proceedings consistent with this opinion.
MAY, J., and ROTHSCHILD, RONALD J., Associate Judge, concur.