DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PEOPLE'S TRUST INSURANCE COMPANY,**
Appellant,

v.

**AVROHOM CHEN** and **SHIFRA CHEN,**
Appellees.

No. 4D21-1060

[January 12, 2022]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; David A. Haimes, Judge; L.T. Case No. CACE18-007499.

David C. Borucke of Cole, Scott & Kissane, P.A., Tampa, for appellant.

Melissa A. Giasi and Erin M. Berger of Giasi Law, P.A., Tampa, for appellees.

GERBER, J.

In this first-party homeowners' insurance dispute, the insurer appeals from the circuit court's final summary judgment in the insureds' favor. The insurer primarily argues the circuit court erred in finding the insurer had breached the insurance policy by initially proposing to undertake repairs to the insureds' home which would not have restored the home to its pre-loss condition. According to the insurer, no breach occurred because, in the event of disagreement between the parties over the scope of repairs, the policy provided that an appraisal panel would determine the scope of repairs, and the insurer had agreed to perform the scope of repairs outlined in the appraisal award. We agree with the insurer's argument and therefore reverse the final summary judgment.

## *Factual Background and Procedural History*

The underlying facts are undisputed. During the contract period, a hurricane damaged the roof and interior of the insureds' home. The insureds reported the damage to the insurer.

The insurer sent the insureds an initial coverage determination letter. The letter pertinently stated: "We have completed our investigation ... and determined that there is coverage for your loss ...." The letter also advised that the insurer, pursuant to a policy endorsement, was electing to use its preferred contractor to repair the insureds' home to its pre-loss condition "by making repairs to all covered damages, once there is a determination of what those damages are ...." The letter also explained "[h]ow ... repairs continue if there is a disagreement on what is to be repaired":

> Once we are placed on notice by you that a dispute exists as to [the insurer's] Estimate and Scope of Repairs, your policy's [Preferred Contractor] Endorsement provides a method by which either of us may submit the dispute to an appraisal process, and an appraisal panel will make the determination of what will be repaired. The appraisal panel will provide both of us with an "Appraisal Award" which specifies what will be repaired, and how much we will pay our preferred contractor to make those repairs. Upon receipt of the appraisal panel's award, we will continue forward with repairs based upon the scope outlined in the appraisal award.

The insurer later sent the insureds a second letter which limited the scope of covered damages. More specifically, the second letter stated: "[T]he scope of covered damages does not include your roof, the screens on your screen enclosure or damages to the interior of your home." (emphasis omitted). The second letter further included an estimate indicating that the preferred contractor would be replacing the insureds' existing hardwood flooring with "laminate – simulated wood flooring." The second letter, like the first letter, noted that, pursuant to the policy, any disagreement as to the scope of repairs would be resolved by an appraisal award, to which both the insurer and the insureds would be bound.

Nine days after the insurer sent the second letter, the insureds filed the underlying breach of contract action against the insurer. The complaint pertinently alleged the insurer had breached the policy by failing to agree to repair the insureds' home to its pre-loss condition. The insureds sought money damages to enable them to effectuate repairs on their own.

The insurer filed an answer, affirmative defenses, and counterclaims. One of the insurer's affirmative defenses pertinently alleged:

> [The insurer] was ready, willing, and able to perform under the Policy .... [However,] [i]nstead of ... allowing repairs as estimated by [the insurer], the [i]nsureds sued for money

never owed on the Claim irrespective of any disputes as to scope of covered repairs.

The insurer later filed a motion to compel appraisal and motion to compel the insurer's right to repair. The insureds, in turn, filed a motion for summary judgment. The insureds' summary judgment motion pertinently alleged:

The [insurer] contends that the [i]nsureds denied its right to repair under the policy; however, this is … not true. The [i]nsureds agreed to allow the [insurer] to perform repairs for all of the portions of the Property it contends are covered; however, based on the [insurer's second letter], those portions would not contain the roof, screens on the screen enclosure, and the damages to the interior of the Property, which the [insureds] allege[] were damaged due to a peril insured against.

....

The present lawsuit is brought to repair damages to the roof and interior damages. The present lawsuit is also brought to force the [i]nsurer to replace the affected flooring using the proper flooring material – hard wood flooring, and not simulated laminate flooring.

....

The [i]nsured[s] [are] now left in a peculiar predicament: either they sit by idly, allowing the [insurer] to perform work using the wrong materials, or [the insureds] attempt[] to prevent the [insurer] from completing the repairs [which the insureds] believe[] are covered until [the insureds] agree as to the flooring material.

The insurer filed a response, arguing that the policy's designated dispute resolution mechanism was appraisal, and the insureds had prematurely filed suit.

The circuit court entered an order deferring ruling on the insureds' motion for summary judgment, and entered a separate order granting the insurer's motion to compel appraisal and staying the action pending the appraisal's completion.

The appraisal panel determined, contrary to the insurer's initial estimate, that the roof damages were within the scope of covered damages to be repaired, and that the hardwood flooring should be replaced with hardwood flooring, not laminate simulated wood flooring. The appraisal panel also determined the total dollar amount for the covered repairs.

The insureds filed the appraisal award with the circuit court. The insureds also filed a motion to lift the stay, and a response to the insurer's motion to compel its right to repair. In the response, the insureds maintained that the insurer's initial estimate breached the policy. The insureds requested that the insurer "be forced to tender the amount awarded through appraisal, allowing the insureds to effectuate repairs on their own."

The insureds then filed an amended summary judgment motion. The insureds' amended motion made the same arguments as in their original motion, but added the following:

> It wasn't until *after* the filing of the present lawsuit that the [insurer] decided to invoke appraisal.

> The parties attended appraisal, and a mutually agreed[-]to appraisal award was entered based on the scope of covered damages.

> This appraisal award includ[ed] the damaged flooring, which was determined to be "pre-finished solid wood flooring" and not simulated laminate flooring.

> The [insurer] was set to perform repairs with the wrong materials, which is a breach of both the Florida Statutes and the new contract created in invoking the [insurer's] right to repair.

> This appraisal award vindicates the argument made by the [insureds] and shows that the lawsuit was necessary to prevent the repairs with improper materials.

(paragraph enumeration omitted).

The circuit court held a hearing on the insurer's motion to compel its right to repair and the insureds' summary judgment motion. At the hearing's start, the circuit court expressed confusion to the insurer's counsel as to why the insurer was seeking to invoke the right to repair:

4

I don't understand why [the insurer is seeking to invoke the right to repair]. [The insureds] [are] willing to just take the money, even a lesser amount, and go. You want [the insurer] on the hook not only to repair, but if there's any issues … [the insurer is] basically insuring the repairs.

The insurer's counsel responded:

[I]t's [the insurer's] position that the right to repair is … contractual …. [The insureds] … signed up for it. It's a term of the policy that must be complied with.

[The insureds' position] … is that … [the insurer's] initial determination … constitutes a breach and I suppose an anticipatory breach because the repairs themselves had never been conducted, that would relieve the insureds of having to comply with the election to repair.

That argument is not legally sound … because … the election to repair endorsement contains a dispute resolution mechanism, appraisal. If the insureds think that [the insurer's] initial assessment is wrong, they contracted away their right to seek a judicial determination in favor of an extrajudicial dispute resolution which is appraisal, and that that dispute would be resolved via appraisal which has occurred.

….

… It binds both parties, and … the insureds should otherwise be obligated to comply with the contract that they signed up for ….

The insureds' counsel disagreed:

[W]hat happened is … the appraisal award … which wasn't compelled until after the filing of this lawsuit, that constitutes a confession of judgment where [the insurer] got the objective cash value wrong, which also vindicates the lawsuit as a whole. … [I]n addition to [the insureds] letting [the insurer] know that [the insurer] got the materials wrong in the flooring, … [the insureds] sued [the insurer] over the scope of the areas that [the insurer] said were not covered which as [the

5

insurer's] counsel just admitted [the insurer] paid for a whole new roof which [the insurer] said wasn't covered.  So … that's [the insureds'] argument as to how [the insurer] [has] breached in that sense.

 ....

 … [T]he point that [the insureds] [are] trying to make … is: At what point do [the insureds] have to wait for that sufficiency standard to be triggered?  …  [T]he issue isn't whether [the insureds] will be satisfied … it's that [the repairs] will be done improperly.

 And so [the insureds'] argument is that that sufficiency standard has already been triggered when the only thing that caused [the insurer] to change [its] mind was the filing of this lawsuit and the subsequent invocation of appraisal.

At the end of the hearing, the circuit court entered an order granting the insureds' amended summary judgment motion and denying the insurer's motion to compel the right to repair.  The circuit court found the insurer's initial estimate breached the policy, which, in turn, forfeited the insurer's contractual right to make any repairs, and required the insurer to make a loss payment to the insureds pursuant to the appraisal award.

The circuit court later entered a final judgment in the insureds' favor consistent with the foregoing order.

### *This Appeal*

This appeal followed.  The insurer argues it did not breach the policy by providing the insureds with an initial estimate which was later overridden by the appraisal award.  According to the insurer, the policy did not impose a legal duty to provide the insureds with a mistake-free initial estimate, nor were the insureds damaged by the initial estimate, because the insurer consistently indicated its intention to abide by the appraisal award's scope of repairs.  Thus, the insurer argues, the circuit court erred in re-writing the policy by awarding a loss payment when the circuit court should have compelled the insureds to allow the insurer's preferred contractor to complete the appraisal award's directed repairs.

The insureds respond that the circuit court properly found the insurer breached the policy by initially opting to undertake repairs which would not restore the property to its pre-loss condition.

6

Our review is de novo. *Rodrigo v. State Farm Fla. Ins. Co.*, 144 So. 3d 690, 692 (Fla. 4th DCA 2014) ("The standard of review governing a [circuit] court's ruling on a motion for summary judgment based upon the interpretation of an insurance policy is de novo.") (citation omitted). "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000) (citation omitted).

Applying a de novo standard of review, we conclude the circuit court erred in entering summary judgment in the insureds' favor because, contrary to the circuit court's finding, the insurer did not breach the policy. The insureds alleged the insurer had breached the policy merely by providing an initial estimate with which the insureds did not agree. However, the policy did not confer upon the insureds, in the event of such a disagreement, the immediate right to sue the insurer for breach of contract.

Rather, the policy included an endorsement which provided the insureds with a lower premium and, in exchange, designated an appraisal panel to resolve any dispute as to the scope of repairs and gave the insurer the contractual right to have its preferred contractor repair any covered damage to the insureds' home in lieu of issuing a loss payment. The preferred contractor endorsement pertinently provided:

> In consideration of the premium credit shown on your Declarations Page, you agree to the following:
>
> ....
>
> You agree that in the event of a covered loss to your dwelling or other structures on the residence premises ... we at our option may select [our preferred contractor] to repair your damaged property as provided by the policy and its endorsements.
>
> ....
>
> When we have exercised our option to repair your damaged property pursuant to this Preferred Contractor Endorsement, we will repair the damaged property with material of like kind and quality without deduction for depreciation. *Such repair is*

7

*in lieu of issuing any loss payment that would otherwise be due under the policy.*

*....*

Where we elect to repair:

*If you and we fail to agree on the amount of loss, which includes the scope of repairs, either may demand an appraisal as to the amount of loss and the scope of repairs. ... The appraisers will separately set the amount of loss and scope of repairs. If the appraisers submit a written report of an agreement to us, the amount of loss and scope of repairs agreed upon will be the amount of loss and scope of repairs. ...*

The scope of repairs shall establish the work to be performed and completed by [our preferred contractor]. *Such repair is in lieu of issuing any loss payment to you that otherwise would be due under the policy.* The amount of loss shall establish only the initial amount paid to [our preferred contractor] by us, and any additional amounts required to complete repairs shall be our responsibility and will be paid to [our preferred contractor] without regard to policy limits or the amount of initial payments.

(emphasis added; internal quotation marks and paragraph enumeration omitted).

The insureds appear to have simply disregarded the policy-designated appraisal process by prematurely filing suit only nine days after the insurer sent its second letter describing the work which the insurer's preferred contractor intended to perform and the material which the preferred contractor intended to use, with which the insureds disagreed. In the face of that prematurely-filed suit, the insurer properly sought to enforce the policy-designated appraisal process by filing a motion to compel appraisal. *Cf. Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021, 1025 (Fla. 2002) ("[W]hen the insurer admits that there is a covered loss, but there is a disagreement on the amount of loss, it is for the appraisers to arrive at the amount to be paid.") (citation and emphasis omitted).

The fact that the appraisal award supported the insureds' claim did not confer upon the insureds the immediate right to resume their breach of contract action. Rather, as the insurer argued to the circuit court, the

8

policy provided that upon receipt of the appraisal award, the insurer would be given the opportunity to continue forward with repairs based upon the scope outlined in the appraisal award.

We acknowledge the circuit court appears to have attempted to impose what it believed was a less antagonistic resolution by requiring the insurer to pay the appraisal award's loss payment amount to the insureds, who then could effectuate their own repairs. However, such a ruling contravened the policy by imposing a remedy which the policy's plain language expressly stated was not available. Instead, the policy's plain language provided the insurer with the opportunity to proceed with repairs based upon the scope outlined in the appraisal award.

Our conclusion as expressed in this opinion should not be construed to suggest the insureds may never be able to pursue a breach of contract action against the insurer. For example, if the insurer fails to continue forward with repairs based upon the scope outlined in the appraisal award, or if the repairs are defective, then the insureds' ability to pursue a breach of contract action may ripen, provided the insureds have complied with all other required conditions precedent under the contract before filing suit. *See Vainberg v. Avatar Prop. & Cas. Ins. Co.*, 321 So. 3d 231, 235 (Fla. 4th DCA 2021) ("[I]n a situation where the option to repair has been invoked … the insurer is obligated to perform repairs which will adequately return the insured property to its pre-loss condition."); *Drew v. Mobile USA Ins. Co.*, 920 So. 2d 832, 835 (Fla. 4th DCA 2006) ("[W]hen the insurer makes its election to repair, that election is binding upon the insured and … the insurer is bound to [perform repairs] within a reasonable time."). Those possibilities, however, have yet to ripen because of the error which occurred below.

### *Conclusion*

Based on our reasoning above, we reverse the circuit court's order granting the insureds' amended summary judgment motion and denying the insurer's motion to compel its right to repair. We remand for the circuit court to: (1) vacate both the order and the final judgment; (2) enter an order denying the insureds' amended summary judgment motion and granting the insurer's motion to compel its right to repair; and (3) conduct any necessary further proceedings, so long as those further proceedings remain consistent with this opinion.

In addition to the foregoing relief, the insurer has requested that we pass upon the insurer's affirmative defense alleging that the insureds had not complied with the policy's other required conditions precedent. We

cannot consider that additional defense in this appeal because the circuit court has not ruled on that defense in the first instance.

*Reversed and remanded with instructions.*

MAY and FORST, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**