# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY

NICOLE ROBINSON &
KALIYAH ROBINSON,

 Defendants-Below/Appellant,

  v.

ROBIN DRIVE AUTO, LLC,

 Plaintiff-Below/Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No: CPU4-24-000736

Submitted: July 14, 2025
Decided: August 19, 2025

Dorranda R. Bordley, Esquire
Legal Services Corp.
100 West 10th Street
Wilmington, DE 19801
(302) 575-0408
*Attorney for Appellant*

Robert C. McDonald, Esquire
Silverman McDonald & Friedman
1523 Concord Pike, Suite 400
Wilmington, DE 19803
(302) 888-2900
*Attorney for Appellee*

## DECISION AFTER TRIAL

**Danberg, C.J.**

1

This breach of contract action, which is before the Court on appeal *de novo* from a decision of the Justice of the Peace Court, stems from an agreement between Appellants (collectively the "Robinsons") Nicole Robinson ("Ms. Robinson") and Kaliyah Robinson ("Ms. Kaliyah") and Appellee Robin Drive Auto, LLC ("Robin Drive") for the sale of a 2008 Honda Accord (the "Honda"). On May 16, 2025, the case proceeded to trial on Robin Drive's breach of contract claim. At the conclusion of the trial, the Court reserved decision. After trial, and before the Court could render a decision, the Robinsons filed a Motion to Amend on June 13, 2025. Robin Drive responded on July 14, 2025. At which time, the Court took the Motion and decision after trial under advisement. This is the Court's final decision after trial.

## FACTS AND PROCEDURAL HISTORY

On or about August 21, 2023, Ms. Kaliyah visited Robin Drive, located at 804 Pulaski Highway, Bear, Delaware, to purchase a used vehicle. There, Ms. Kaliyah discovered a Honda with a price tag of $10,000.00 displayed around the rear-view mirror. After determining that she liked the vehicle, Ms. Kaliyah engaged in negotiations with the owner and manager of Robin Drive, David Andrew ("Mr. Andrew"). During their discussions, Mr. Andrew informed Ms. Kaliyah that she would need a co-signer for the Honda. Taking this into account, Ms. Kaliyah called her mother, Ms. Robinson, to request her assistance as a co-signer.

2

When Ms. Robinson arrived, the parties began reviewing the paperwork to finance and purchase the Honda. At the time of signing, the Honda's odometer showed 152,936 miles. The parties had agreed that the Honda would cost $9,995.00, excluding tax and tags.[1] Ms. Kaliyah was to make a down payment of $4,000.00, which included a payment of $2,000.00 at the time of purchase, while agreeing to a deferred down payment of an additional $2,000.00, to be paid in four bi-weekly installments starting on August 28, 2023. The payments of the remaining balance of $8,220.00 were set to be paid beginning on October 19, 2023.

To finalize the purchase, Ms. Kaliyah and Ms. Robinson signed extensive amounts of paperwork, including the purchase agreement, sales agreement, motor vehicle retail installment sales contract, promissory note, the buyers guide, and the odometer disclosure statement. It is important to note that the buyers guide the Robinsons signed indicated that they were buying the Honda "as-is" and disclaimed any warranties. Also contained in the contract is a provision awarding attorneys' fees to Robin Drive for enforcement of any portion of the contract.[2] At trial, Ms. Kaliyah testified that she failed to read the documents thoroughly and relied on Mr. Andrew's explanation. Before leaving the lot, Ms. Robinson instructed Ms. Kaliyah to take the Honda for a test drive.

---

[1] The total cost of the Honda was $11,225.00.
[2] Appellee's Ex. A, at 31.

During the drive, Ms. Kaliyah noticed that the radio was inoperable, the tint on the back window obstructed the view, and the dashboard displayed a check-engine alert. After returning to Robin Drive, Ms. Kaliyah informed Mr. Andrew of the three issues. In response, Mr. Andrew assured her that he would address each one of them.

In reality, there was no malfunction with the radio; it had merely been set to auxiliary mode. Upon switching it to FM, Mr. Andrew confirmed it functioned perfectly well. For the tint issue, Mr. Andrew issued Ms. Kaliyah a voucher redeemable at the neighboring autobody shop, Advance Service Center, to have the tint removed. He also examined the Honda to determine the cause of the check-engine light, which indicated a small evaporative emission control system ("EVAP") leak. Mr. Andrew tightened the fuel cap, which resolved the issue, and the check-engine light turned off. Satisfied with these repairs, Ms. Kaliyah drove the Honda home. From her arrival at Robin Drive to when she drove off the lot with the Honda, Ms. Kaliyah was at Robin Drive for roughly ten (10) hours.

That, however, was not the end of the issues with the Honda. The check-engine light reappeared the following day. Consequently, Ms. Kaliyah took the Honda to Auto Zone for a diagnostic check. The report revealed several issues: (1) an EVAP issue; (2) a short in the left front seat belt buckle switch; (3) a modulator-control unit power source low voltage; and (4) a control unit low voltage. With the

4

diagnostic report in hand, Ms. Kaliyah returned to Robin Drive, and a technician swapped out the Honda's battery, and the check-engine light deactivated. Two hours later, the Honda's check-engine light reappeared while Ms. Kaliyah was driving to New York. What occurs next is disputed by the parties.

Ms. Kaliyah testified that she returned the Honda to Robin Drive on August 29, 2023, due to the check-engine light consistently reappearing and that the Honda would not pass inspection if the light remained activated. She also testified that she handed the keys to an employee at Robin Drive. Conversely, Ms. Robinson testified that they gave the keys directly to Mr. Andrew, who instructed them to return the following day so he could perform a license plate check to verify that there were no outstanding tickets or accidents involving the Honda.

In contrast, Mr. Andrew testified that Ms. Kaliyah returned the Honda to Advance Service Center. To support this contention, Robin Drive presented a repair order from Advance Service Center dated August 29, 2023, as evidence.[3] Mr. Andrew further testified that he was absent from Robin Drive on August 29th. He also explained why the check-engine light reappeared. He suggested the light's reappearance was caused by a flat tire on the Honda, which he claimed put a strain

---

[3] Incidentally, missing from the repair order was a signature from Ms. Kaliyah authorizing Advance Service Center to perform the repairs indicated on the form.

on the engine. He also testified that despite no police report, the Honda appeared to have been in a back-end collision.

Regardless of the conflicting testimonies, it is undisputed what occurred next. The following day, August 30, 2023, Ms. Kaliyah and Ms. Robinson returned to Robin Drive and spoke with Mr. Andrew. He informed Ms. Kaliyah that if she was unhappy with the Honda, she could choose another vehicle on the lot, and he would swap it for the Honda. Ms. Kaliyah declined this offer and instead requested a refund of her $2,000.00 deposit. Mr. Andrew ignored their request and began assisting another customer instead. As a result, Ms. Robinson called the police, who informed the Robinsons that Mr. Andrew wanted them off the property and that they had to resolve the matter through the court system.

Approximately two weeks later, Ms. Robinson attempted to resolve the issue with Mr. Andrew, but this effort proved unsuccessful. The parties did not have any further contact until November 2, 2023, when Robin Drive sent Ms. Kaliyah and Ms. Robinson a letter stating that it had become aware that the Honda was no longer in their possession. Robin Drive learned of this through Advance Service Center. At trial, Mr. Andrew testified that he did not retrieve the Honda from Advance Service Center, which would have cost $500, due to prior negative experiences in similar situations. Believing that the Honda was in Robin Drive's possession, Ms. Kaliyah and Ms. Robinson opted to disregard the November 2nd letter.

Another issue addressed at trial was the mileage on the Honda. Before selling the Honda to the Robinsons, Robin Drive acquired the Honda through a broker. The sales form indicated a potential odometer rollback. When the Robinsons purchased the Honda from Robin Drive, the odometer disclosure statement certified that the Honda had 152,936 miles. The form also contained a warning stating, "The odometer reading is not the actual mileage. Warning – odometer discrepancy." That box was not checked. The Robinsons performed a CarFax search of the Honda, which detailed its service history and mileage, indicating a possibility of odometer rollback.

During the trial, Mr. Andrew claimed that CarFax is unreliable. He testified that he saw various discrepancies in the Honda's CarFax report. Additionally, he asserted that he checked with the Delaware Department of Motor Vehicles ("DMV"), which did not report any potential odometer rollback. Trusting the accuracy of Delaware's DMV, Mr. Andrew concluded that the mileage on the Honda was accurate, which led him to leave the warning box unchecked on the odometer disclosure statement.

Ms. Kaliyah and Ms. Robinson were to begin making payments on the Honda on August 28, 2023. However, they made no payments since they believed they had returned the Honda to Robin Drive. As a result of their failure to make any payments on the Honda, Robin Drive initiated suit against them in the Justice of the Peace

Court.[4] It was not until the trial in that court that the Robinsons learned that Robin Drive did not have possession of the Honda. After this revelation, Ms. Robinson called the police to report the Honda stolen.

Ms. Kaliyah and Ms. Robinson appealed the Justice of the Peace Court's decision to this Court, raising the following claims: (1) violation of Delaware's Disclosure of Odometer Information statute; (2) violation of Delaware's Retail Installment Act; (3) violation of Federal Odometer Law, 49 U.S.C. § 32703;[5] (4) violation of Delaware's Consumer Protection Act; (5) violation of 6 Del. C. § 2732; (6) violation of the Deceptive Practices in Consumer Contracts Act; (7) breach of express and implied warranties under the Magnuson-Moss Warranty Act; (8) revocation of acceptance under Article 2 of the Uniform Commercial Code (the "UCC"); and (9) failure to mitigate damages. The Robinsons seek a monetary award of $2,000.00 for the down payment paid to Robin Drive, along with treble damages, compensatory damages, costs, pre- and post-judgment interest, and attorneys' fees.

On the other hand, Robin Drive alleges that the Robinsons breached the agreement by failing to make payments on the Honda as stipulated in the sales and purchase agreement. Robin Drive seeks a judgment for $10,248.00, plus pre- and

---

[4] *Robin Drive Auto LLC v. Nicole Robinson & Kaliyah Robinson*, Del. J.P., CA No. JP13-23-010516, Hanby, M. (March 4, 2024).
[5] Appellants filed a Motion to Amend the Complaint on June 13, 2025, which was subsequently granted.

post-judgment interest at the per diem rate of 22.90% from August 28, 2023, along with attorneys' fees.

A trial was held on May 16, 2025, at the conclusion of which the Court reserved decision. On June 13, 2025, the Robinsons filed a Motion to Amend the Complaint to conform to the evidence presented at trial. On July 14, 2025, Robin Drive filed a Motion in Opposition to the Robinsons' Motion to Amend.

## DISCUSSION

In a bench trial, the Court serves as finder of fact; it must weigh the credibility of witnesses and resolve the conflicts in their testimony.[6] It is incumbent on the plaintiff to prove each element of their claims by a preponderance of the evidence, meaning "proof that something is more likely than not."[7] As such, the Court must "find in favor of the party upon whose side the greater weight of the evidence is found."[8]

---

[6] *See Johnson v. State*, 929 A.2d 784 (Del. 2007) (TABLE); *In re 2004 Harley Davidson VIN No. 1VF9FV31A84R116374*, 2011 WL 601440, at *3 (Del. Super. Ct. Feb. 2, 2011); *Pencader Associates, LLC v. Synergy Direct Mortgage Inc.*, 2010 WL 2681862, at *3 (Del. Super. Ct. June 30, 2010).

[7] *Del. Express Shuttle, Inc.*, 2002 WL 31458243, at *17 (quoting Del. Super. P.J.I. Civ. § 4.1 (2000)).

[8] *D.W. Burt Concrete Construction, Inc. v. Dewey Beach Enterprises, Inc.*, 2016 WL 639653, at *2 (Del. Super. Ct. Feb. 17, 2016) (citing *Patel v. Patel*, 2009 WL 427977, at *3 (Del. Super. Ct. Feb. 20, 2009)).

## I.  *Motion to Amend*

The Robinsons seek to amend their counterclaim to include breach of the Federal Odometer Disclosure Act, 49 U.S.C. §§ 32705, 32710, pursuant to Court of Common Pleas Civil Rule 15(b). Rule 15(b) allows a party to amend a complaint to conform to the evidence at any time, even after judgment:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the Court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the Court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The Court may grant a continuance to enable the objecting party to meet such evidence.

The Robinsons aver that there is no prejudice to Robin Drive because the Robinsons already pled a counterclaim for breach of the State odometer disclosure act at the onset of this action and had the opportunity to rebut this allegation at trial.

In the inverse, Robin Drive argues that Rule 15(b) has no application to the current matter and the Court should deny the Robinsons' post-trial motion. While Robin Drive does not argue that it is prejudiced by the Robinsons' Motion, it does allege that the Robinsons had their day in court, where the issues were fully and fairly litigated. Robin Drive also contends that for the Robinsons to be entitled to amend pursuant to Rule 15(b), it would have needed to make an objection at trial, or the Robinsons would have needed to request a pre-trial continuance, an action which neither party pursued.

Court of Common Pleas Civil Rule 15 permits amendments to pleadings unless it would prejudice the opposing party.[9] The purpose of the rule is to resolve cases based on their merits.[10] A decision to permit or deny an amendment is left to the trial judge's discretion.[11]

While there is minimal Delaware case law on Rule 15(b), federal courts, whose Rule 15(b) serves as the model for Delaware's, often allow post-trial

---

[9] *State ex rel. Structa-bond, Inc. v. Mumford & Miller Concrete, Inc.*, 2002 WL 31101938, at *2 (Del. Super. Sept. 17, 2002).
[10] *Id.*
[11] *Id.*

11

amendments of the complaint.[12] Federal precedent indicates that an amendment under Rule 15(b) "should be permitted if the record indicates that the parties understood that the evidence was aimed at the unpleaded issue."[13] The party opposing the amendment must demonstrate that allowing it would be prejudicial to their defense.[14]

Robin Drive's allegation that Rule 15(b) comes into play only if it objected to evidence presented at trial is misconceived. Instead, the rule is laying out the procedure should a party object to evidence presented at trial outside the claims alleged in the pleadings.[15] The Rule clearly allows for post-trial motions to amend the complaint to conform to evidence presented at trial.[16] More importantly, Robin Drive clearly states in its Opposition Motion that neither party is prejudiced by the Robinsons' Motion to Amend. Further, the evidence the Robinsons presented at trial was aimed at the unpleaded issue. Thus, the Court has no reason to deny the Robinsons' Motion.

Therefore, the Robinsons' Motion to Amend the Complaint is granted.

---

[12] *Id. at *3.*

[13] *State ex rel. Structa-bond, Inc. v. Mumford & Miller Concrete, Inc.*, 2002 WL 31101938, at *3 (Del. Super. Sept. 17, 2002).

[14] *Id.*

[15] CCP Civ. R. 15(b).

[16] *Id.*

## II. Delaware's Retail Installment Act & Delaware's Disclosure of Odometer Information Statute

The Robinsons alleged two claims in their appeal that can quickly be disposed of: (1) violation of Delaware's Retail Installment Act, and (2) violation of Delaware's Disclosure of Odometer Information statute.

The Robinsons claim that Robin Drive violated Delaware's Retail Installment Sales Act ("DRISA"). While DRISA regulates installment sales of personal and household goods,[17] it does not cover the sale of motor vehicles.[18] Thus, the Robinsons' claim that Robin Drive violated DRISA fails.

Similarly, Delaware's Disclosure of Odometer Information statute does involve motor vehicles.[19] But does not provide for a civil cause of action.[20] Only the State can bring forth criminal charges when a person violates this statute.[21] Therefore, the Robinsons' claim that Robin Drive violated Delaware's Disclosure of Odometer Information statute also fails.

---

[17] 6 Del. C. § 4301(3).
[18] 6 Del. C. § 4301(3); *Freeman v. DE Auto Sales, Inc.*, 1987 WL25492, at *5 (Del. Super. Ct. Nov. 19, 1987).
[19] 21 Del. C. § 6407.
[20] 21 Del. C. § 6420.
[21] 21 Del. C. § 6420.

## III. Federal Odometer Act

The Federal Odometer Act ("the Act") provides for a private cause of action where a party violates the Act with the intent to defraud.[22] The Act's stated purpose is: "(1) to prohibit tampering with motor vehicle odometers; and (2) to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers."[23] Here, the Robinsons allege that Robin Drive violated 49 U.S.C. § 32705.

> Section 32705 provides:
>
> a person transferring ownership of a motor vehicle shall give the transferee the following written disclosure: (A) Disclosure of the cumulative mileage registered on the odometer. (B) Disclosure that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled.[24]

Further, "[a] person transferring ownership of a motor vehicle may not violate a regulation prescribed under this section or give a false statement to the transferee in making the [odometer] disclosure required by such a regulation."[25]

---

[22] *Goldman Motor Sales & Leasing v. Singh*, 2025 WL 1256722, at *8 (N.D. Ohio April 30, 2025).
[23] *Id.*
[24] *Id.*
[25] *Id.*

14

The Act also provides that "[a] person may bring a civil action to enforce a claim under this section in an appropriate United States district court or another court of competent jurisdiction."[26] "A person that violates this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $10,000, whichever is greater."[27] In addition, Section 32710 mandates that the Court "shall award costs and a reasonable attorney's fee to the person when a judgment is entered for that person."[28]

Here, the Robinsons allege that Robin Drive sold the Honda to them with knowledge that the odometer had been tampered with and was inaccurate, thus making false statements to the Robinsons with the intent to defraud. The Robinsons presented evidence from CarFax and Robin Drive's Honda purchase form indicating a potential odometer rollback. However, when the Robinsons purchased the Honda, Robin Drive failed to put them on notice that the odometer may have been tampered with, and that the mileage may be inaccurate.

As a preliminary matter, the Robinsons failed to prove that there was a problem with the odometer reading. At best, they raised a question about whether it may have been inaccurate. Nor have they proven that Robin Drive knew the odometer reading was unknown or inaccurate. The Court finds it reasonable that

---

[26] *Singh*, 2025 WL 1256722, at *8.
[27] *Id.*
[28] *Id.*

15

Robin Drive relied upon Delaware's DMV. Mr. Andrew testified that he does not use CarFax because of its unreliability and that even though it had a warning of potential odometer rollback when he purchased the Honda, he certified the mileage through the DMV. More importantly, nothing in § 32710 mandates that the seller of a motor vehicle must investigate whether there has been a potential odometer rollback.

In addition, the Robinsons failed to provide testimony from an expert on the veracity of the CarFax report. CarFax reports are only a compilation of information submitted by third parties. There was no information presented as to what steps CarFax takes to verify the accuracy of these third-party reports. While CarFax reports may be widely used, their accuracy and the process generating them is not common knowledge. All of which leads the Court to believe that Robin Drive was reasonable in its belief that the mileage on the Honda was accurate. Accordingly, the Robinsons failed to prove that Robin Drive failed to comply with the Act.

*IV.   Delaware's Deceptive Trade Practices Act*

The Robinsons allege that Robin Drive violated Delaware's Deceptive Trade Practices Act ("DTPA"). In support of this allegation, the Robinsons argue that Robin Drive made false or misleading statements regarding the Honda's price and standard, quality, and grade, when it was in fact another.

16

The DTPA prohibits engaging in a "deceptive trade practice ... in the course of business, vocation, or occupation."[29] In pertinent part the DTPA provides: "[a] person engages in deceptive trade practice" if they:

...

(7) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

...

(12) Engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.[30]

To succeed in a claim under DTPA, a plaintiff need only prove that the defendant's conduct constitutes one of the twelve enumerated categories of acts.[31] "[T]he DTPA was not intended to redress wrongs between a business and its customers."[32] Thus, for a litigant to have standing under the DTPA, they

---

[29] *Smash Franchise Partners, LLC v. Kanda Holdings, Inc.,* 2023 WL 45608984, at *23 (Del. Ch. July 14, 2023; *Coretel America, Inc. v. Oak Point Partners, LLC,* 2022 WL 2903104, at *9 (Del. Super. July 24, 2022); *Tygon Peak Cap. Mgmt., LLC v. Mobile Inv. Investco, LLC,* 2022 WL 34688, at *27 (Del. Ch. Jan. 4, 2022).
[30] 6 Del. C. § 2532.
[31] *Kanda Holdings, Inc.,* 2023 WL 4560984, at *25.
[32] *Banner v. Moris Auto. Corp.,* 2017 WL 439335, at *4 (Del. Com. Pl. Feb. 1, 2017) (citing *Grand Ventures, Inc. v. Whaley,* 632 A.2d 63, 65 (Del. 1993).

must have "a business or trade interest at stake which is the subject of interference by the unfair or deceptive trade practices of another."[33]

Moreover, "[t]he DTPA was designed to prevent patterns of deceptive conduct, not isolated incidents."[34] Therefore, "relief under the statute is dependent on plaintiff's entitlement to injunctive relief."[35] And "must be supported by allegation of facts that create a reasonable apprehension of a future wrong."[36]

While the Robinsons raised this claim in their complaint on appeal, at trial, it appears that they abandoned their DTPA claim. Nor did the Robinsons ever articulate which of the twelve prohibited practices Robin Drive engaged in. Even if properly asserted, however, their claim would still fall short of what is needed to satisfy a claim under the DTPA. Among the aforementioned categories of deceptive trade practices, the best fit for the Robinsons theory is Section 2532 (a)(7) and (12). Even assuming that the Robinsons' allegations fit into either category, their DTPA claim would fail because they lack standing

---

[33] *Id.*

[34] *Mobile Inv. Investco, LLC,* 2022 WL 34688, at *28; *Coretel America, Inc.,* 2022 WL 2903104, at *9; *see also EDIX Meida Grp., Inc. v. Mahani,* 2006 WL 3742595, at *12 (Del. Ch. Dec. 12, 2006) ("The DTPA was designed to prevent patterns of deceptive conduct, not isolated incidents.").

[35] *Id.* (citing *Agilent Techs., Inc. v. Kirkland,* 2009 WL 119865, at *10 (Del. Ch. Jan. 20, 2009)); *see State ex rel. Brady v. Pettinaro Enters.,* 870 A.2d 513, 537 (Del. Ch. 2005) ("[T]he failure of a party to be able to state a claim for injunctive relief at the time the suit is brough is fatal to claims under the Deceptive Trade Practices Act.")

[36] *Coretel America, Inc.,* 2022 WL 2903104, at *9.

18

to bring a claim under the DTPA. The Robinsons' relationship in this dispute is that of a purchaser (i.e., a customer), and not as a competing business or a person with interest in Robin Drive.

Furthermore, they do not allege a pattern of conduct or reasonable apprehension of future wrong. Instead, the Robinsons' appeal references an isolated incident that occurred roughly two years ago. Nor do the Robinsons seek injunctive relief. Therefore, the Robinsons failed to prove that Robin Drive violated the DTPA.

## V. Delaware Consumer Protection Laws

In their appeal and at trial, the Robinsons claimed that Robin Drive violated Delaware's Consumer Protection Act and Consumer Contract Act.

### a. Delaware's Consumer Protection Act

Delaware's Consumer Protection Act[37] ("DCPA") was enacted in 1965 for the primary purpose "to protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce in part or wholly within [Delaware]."[38] "Unlike the DTPA, the DCPA allows for a private cause of action."[39] To bring a private cause of action, the

---

[37] 6 Del. C. § 2513
[38] 6 Del. C. § 2513; Doe v. Bayhealth Medical Center, Inc.: 2025 WL 1010403, at *12 (Del. Super Ct. April 4, 2025).
[39] *Banner v. Morsi Auto Corp.*, 2017 WL 439335, at *5 (Del. Com. Pl. Feb. 1, 2017).

plaintiff must allege: "(1) the defendant engaged in conduct which violated the statute; (2) the plaintiff was a "victim" of the unlawful conduct; and (3) a causal relationship exists between the defendant's unlawful conduct and the plaintiff's ascertainable loss. The DCPA defines an unlawful practice as:

[t]he act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealing, suppression, or omission, in connection with the sale, lease, receipt, or advertisement of any merchandise.[40]

To prove a claim under this act, the consumer must establish that the merchant made a false statement, with the knowledge that the statement was untrue, or the merchant negligently made a misrepresentation.[41] The merchant need not have intended to make the misrepresentation or omission of a material fact; instead, the merchant only has to intend that the consumer rely on his omission or misrepresentation.[42] Additionally, an unlawful practice is committed regardless of the consumer's reliance.[43] In determining whether a merchant committed consumer fraud, "the statute must be interpreted in light of established

---

[40] *Id.*
[41] *Banner v. Morsi Auto Corp.*, 2017 WL 439335, at *5 (Del. Com. Pl. Feb. 1, 2017).
[42] *Id.*
[43] *Id.*

20

common law definitions and concepts of fraud and deceit."[44] Relief under the DCPA includes both injunctive and restitutional relief for violations.[45]

The Robinsons argue that Robin Drive engaged in misrepresentation and unfair practices concerning the sale and advertisement of the Honda. It is unclear what exact misrepresentation the Robinsons allege Robin Drive made. In considering this claim in light of the testimony, it appears that the Robinsons either alleged that the odometer reading or the overall condition of the Honda was misrepresented. Neither withstands scrutiny. While neither party apprised the Court of this case, *Brandywine Volkswagen, Ltd. v. State of Dept. of Community*,[46] informative.

At first glance, it would appear that this case is identical to the one at hand. In *Brandywine Volkswagen, Ltd.*, the Delaware Supreme Court affirmed a Superior Court's ruling that a car dealership violated the DCPA by misrepresenting a vehicle's mileage.[47] The dealership sold a car showing 13,000 miles, despite having a New York Motor Vehicle Form indicating over 20,000 miles when it acquired the car from auction.[48] The Court determined that this disparity should have prompted the dealership to investigate further and disclose

---

[44] *Id.*
[45] *Baccellieri v. HDM Furniture Ind., Inc.*, 2013 WL 1088338, at *4 (Del. Super. Feb. 28, 2013).
[46] 312 a.2d 632 (1973).
[47] *Id.* at 634.
[48] *Id.* at 633.

21

the difference in the mileage.[49] Its failure to do so constituted a misrepresentation under 6 Del. C. 2513.[50]

However, *Brandywine Volkswagen, Ltd.*, is distinguishable. While Robin Drive's sales form from the auctioneer indicated a potential for a mileage issue, no evidence has been submitted to substantiate that the odometer had been rolled back. Although the Robinsons submitted a CarFax report into evidence, which purports to show that Honda's mileage exceeds Robin Drive's representations, several issues limit its probative value, and Mr. Andrew's testimony regarding its reliability was uncontroverted by the Robinsons.

Another fact distinguishing this case from the *Brandywine Volkswagen, Ltd.*, is that Mr. Andrew testified that he investigated whether the mileage was accurate. He stated that when he submitted the mileage to the DMV, it did not flag the vehicle as a potential rollback. The Robinsons failed to present any evidence or testimony as to what Robin Drive failed to do in relation to the Honda's mileage, nor did they challenge the DMV as being a reliable source as to the mileage. Nor did the Robinsons prove that the odometer reading was wrong. With regard to the condition of the Honda, the vehicle was sold "as-is," and the

---

[49] *Id.* at 634.
[50] *Id.* at 634.

Robinsons failed to establish that any further representations were made with regard to the vehicle's condition.

The Robinsons did not prove by a preponderance of the evidence that Robin Drive violated the DCPA.

### b. Delaware's Consumer Contracts Act

Similarly, the Consumer Contracts Act[51] ("CCA") seeks to protect consumers from deceptive practices in consumer contracts.[52] The CCA "prohibits a person, in a contract for the sale of merchandise, from engaging in a deceptive practice by knowingly or recklessly distorting or obscuring the terms, conditions, or meaning of the contract or creating a likelihood of confusion or misunderstanding by the use of unintelligible words, phrases, or sentences."[53] Furthermore, the CCA "prohibits a person from knowingly or recklessly omitting information required by law to be disclosed in the contract."[54] "Treble damages are available for any person found to have violated the CCA."[55]

Under the CCA, the Robinsons claim that Robin Drive did the following: (1) knowingly and/or recklessly distorted and obscured the terms, conditions, and/or meaning of the contract; (2) knowingly and/or recklessly created a

---

[51] 6 Del. C. § 2732.
[52] *Baccellieri*, 2013 WL 1088338, at *5.
[53] *Id.*
[54] *Id.*
[55] *Id.*

23

likelihood of confusion and/or misunderstanding by its use of unintelligible words, phrases, and/or sentences; and (3) knowingly and/or recklessly omitted information required by law to be disclosed in contracts with consumers. The Robinsons' claim under the CCA cannot prevail.

The Robinsons' first and second claims are unsuccessful. The Court notes that the Robinsons failed to identify precisely which contractual terms were ambiguous or misunderstood, or how any terms were distorted or obscured at trial. At trial, Ms. Kaliyah testified that she either did not sign or did not recall signing most of these documents, insinuating that Robin Drive forged her signature. However, she later conceded to signing the forms without reading them, relying solely on Mr. Andrew's explanation. Further, Ms. Robinson testified that she remembered them signing them. Based upon her selective memory and her demeanor on the stand, the Court finds Ms. Kaliyah's testimony to be lacking credibility. While this does not preclude a claim under the CCA, the Court's analysis of the submitted contracts and trial testimony reveals no ambiguous or confusing terms at issue. Nor was there evidence submitted that Robin Drive distorted or obscured the agreement's terms, meanings, or conditions.

As to the Robinsons' third claim, in neither the complaint nor at trial did they specify what information was omitted that was required by law.[56] To the extent

---

[56] The Robinsons did not identify any law or statute with a mandatory contract disclosure.

that they intended to incorporate the federal and/or state odometer acts into this claim, they are unsuccessful. Even if required, Robin Drive did provide an odometer disclosure report to the Robinsons. The Robinsons simply failed to prove that the Robin Drive was aware of an odometer issue, did not properly investigate an issue, or that the odometer reading was incorrect.

Therefore, the Court finds that the Robinsons failed to prove that Robin Drive violated the CCA.

## VI. Breach of Express and Implied Warranties under the Magnuson-Moss Warranty Act

The Robinsons also argue that Robin Drive breached express and implied warranties under the Magnuson-Moss Warranty Act. The Robinsons argue that Robin Drive made representations to them, which they relied on when purchasing the Honda. Specifically, they claim that Robin Drive promised to remedy the engine light, the radio, and the tint on the back window at the time of purchase. The Robinsons aver that Robin Drive remedied none of these issues and thus it breached the express warranties made to them.

On the other hand, Robin Drive contends that while it agreed to remedy those issues, it did not enter into any warranty with the Robinsons. At trial, Robin Drive pointed to the multiple documents signed at the time of purchase that provide that the Robinsons did not purchase any warranties, disclaimed all warranties, and sold

the Honda "as-is." Alternatively, Robin Drive alleges that, even assuming the existence of a warranty, it fully rectified the reported issues with the Honda.

The Magnuson-Moss Act establishes a statutory cause of action for consumers concerning written warranties and to prevent attempts to disclaim implied warranties where a merchant has provided a written warranty.[57] The Robinsons' claim under the Magnuson-Moss Act fails because neither party has produced a written warranty. In addition, the evidence and testimony presented at trial demonstrated that the Honda was sold "as-is" and without any warranty. Thus, the Robinsons' claim for breach of warranties under the Magnuson-Moss Act is without merit.

At best, the parties may have entered a verbal contract. Under the UCC, an express warranty is created by a seller when "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."[58] The seller need not use the exact words "warrant" or "guarantee," or "have a specific intention to make a warranty."[59] Further

---

[57] *Mayew v. Chrysler, LLC*, 2008 WL 4447707, at *7 (Del. Super. Oct. 1, 2008).
[58] 6 Del. C. § 2-313 (1)(a).
[59] 6 Del. C. § 2-313 (2).

warranty provisions are to be construed and applied liberally in favor of the buyer of goods.[60]

To prevail on a breach of warranty claim, "[t]he buyer must prove: (1) the existence of an express warranty; (2) a breach of the defendant's express … warranty; (3) a causal connection between the defendant's breach and the plaintiff's injury or damage, and (4) the extent of loss proximately caused by the defendant's breach."[61] Further, "the buyer must first prove compliance with any conditions precedent that the seller has imposed with respect to the warranty."[62]

First, Appellant must show that a warranty exists. At trial, there was some contention about whether Robin Drive made an express warranty to the Robinsons. However, the Court finds that Robin Drive did not make an express warranty. As noted above, an express warranty is made when it is the basis of the bargain. That was not the case here. Mr. Andrews agreed to repair the issues on the Honda only after the Robinsons completed the purchase. The promise was not made in connection with the purchase, i.e., the basis of the bargain. Therefore, Mr. Andrew's promise to remedy the three issues with the Honda cannot be construed as an express warranty.

---

[60] *Miller v. Leidos, Inc.*, 2024 WL 4534135, at *6 (Del. Super. Oct. 21, 2024).
[61] *Staging Dimensions, Inc. v. KP Walch Assoc., Inc.*, 2020 WL 1428120, at *5 (Del. Com. Pl. March 19, 2020) (citing *Driscoll v. Automaxx*, 2016 WL 5107066, at *2 (Del. Com. Pl. April 27, 2016)).
[62] *Id.*

## VII. Revocation of Acceptance

In connection with their claim of breach of express warranties, the Robinsons argue that they revoked acceptance of Honda in a timely manner. The Robinsons aver that they revoked the contract to purchase the Honda when they returned it eight (8) days after purchasing it because of the continuous check-engine light being activated and after Robin Drive's two attempts to remedy it to no avail. Moreover, the testimony was that the Honda's radio and tint were also never corrected. However, Robin Drive claims that the Robinsons never returned the Honda to them, but to Advance Service Center.

Under the UCC, the buyer has the right to inspect the goods before payment or acceptance.[63] The fact that the buyer paid prior to inspection of the goods does not mean that the buyer has accepted the goods.[64] However, rejection of the goods must be at a reasonable time after their delivery or tender, and the buyer must seasonably notify the seller of the rejection.[65]

Acceptance of the goods occurs when the buyer fails to make an effective rejection under 6 Del. C. § 2-602.[66] Pursuant to 6 Del. C. § 2-607(1), the buyer must pay the contract rate for any goods accepted. A buyer may revoke acceptance

---

[63] 6 Del. C. § 2-513(1).
[64] 6 Del. C. § 2-512(2).
[65] 6 Del. C. § 2-602(1).
[66] 6 Del. C. § 2-606(1)(b).

of the goods where the defect substantially impairs the value of the goods to them.[67] However, "revocation of acceptance requires a showing that any non-conformity has not been 'seasonably cured' and notice within a 'reasonable time.'"[68]

The UCC does not define the phrase "reasonable time," although it is used in numerous sections of the Sales chapter.[69] In addressing this phrase under the provisions for revocation, the Delaware Supreme Court has stated that reasonableness is generally a question of fact for the factfinder to decide.[70] The Court observed that in some cases, notice given to the seller two or even four years after discovering the nonconformity is reasonable. Still, there are cases in which "a buyer has delayed so excessively that his actions become untimely as a matter of law."[71] In other words, whether a plaintiff has given a defendant reasonable notice under the UCC sales provisions must be decided on a case-by-case basis.[72]

At first glance, it appears that the Robinsons may have successfully revoked under Article 2 of the UCC, but that is not the case. The Honda indeed had a non-conformity; the check engine light was activated. This effectively impairs the vehicle's value because it prevents the Honda from being registered with

---

[67] 6 Del. C. § 2-608(1).
[68] *Staging Dimensions, Inc.*, 2020 WL 1428120, at *6.
[69] *Smith v. Daimlerchrysler Corp.*, 2002 WL 31814534, at *4 (Del. Super. Nov. 20, 2002).
[70] *Id.*
[71] *Id.*
[72] *Id.*

29

Delaware's DMV, which both parties agreed to at trial. Further, the Robinsons had given notice within a reasonable time. They revoked acceptance eight days after purchasing the Honda, and after two attempts by Robin Drive to remedy the issue.

The pitfall for the Robinsons is the claim that Robin Drive did not "seasonably cure" the engine light issue. While neither federal nor state laws specify the exact number of failed repair attempts required to justify a buyer revoking acceptance, caselaw suggests "at a minimum there must be more than one or two attempts, or there must be an outright refusal to repair."[73] In this instance, the Robinsons' unwillingness to obtain satisfaction from Robin Drive regarding the most crucial defect prevents them from claiming a failure to repair. Given that the Robinsons afforded Robin Drive only two opportunities to rectify the issue, this falls demonstrably short of the threshold revocation stipulated by Article 2 of the UCC.[74]

In addition, Robin Drive claims to have resolved the engine light issue. According to Mr. Andrew's testimony, Ms. Kaliyah subsequently drove the Honda with a flat tire, which placed undue stress on the engine and reactivated

---

[73] *Olmstead v. Gen. Motors Corp,, Inc.*, 500 A.2d 615, 619 (Del. Super. 1985) (citing *Volkswagen of Am., Inc. v. Harrell*, 431 So.2d 156 (Ala. 1983); *Winchester v. McCulloch Bros. Garage*, 388 So.2d 927 (Ala. 1980)).
[74] *See id.*

the warning light. This testimony was not effectively rebutted. The Court finds Mr. Andrew's testimony to be credible and concludes that the engine light would not have reappeared had Ms. Kaliyah not driven on the flat tire.

The testimony also indicated that the radio was fully functional when switched from auxiliary mode to FM. After Mr. Andrew adjusted the setting, Ms. Kaliyah voiced no dissatisfaction with its performance. Moreover, the Robinsons failed to redeem the voucher provided by Robin Drive to remove the rear window tint. Therefore, the Court cannot find that the reason for the revocation of the Honda could be attributed to the issue with the radio or tint.

Thus, the Robinsons' Article 2 revocation claim fails because the weight of the credible evidence is against them.

### VIII. Breach of Contract

To prevail on a breach of contract claim, the party alleging the breach must prove, by a preponderance of evidence, that: (1) a contract existed between the parties; (2) the defendant materially breached an obligation imposed by the contract; and (3) the plaintiff suffered damages because of the breach.[75] Delaware law has established that "to recover damages for any breach of contract, plaintiff must demonstrate substantial compliance with all of the provisions of [the]

---

[75] *Gregory v. Frazer*, 2010 WL 4262030, at *1 (Del. Com. Pl. Oct. 8, 2010); *VLIW Tech., LLC v. Hewlett-Packard, CO.*, 840 A.2d 606, 612 (Del. 2003).

contract."[76] Damages for breach of contract will be in an amount sufficient to return the party damaged to the position that party would have been in had the breach not occurred.[77]

In this case, there is no dispute that the parties entered into a contract. Thus, the issues presented to this Court are: (1) whether the Robinsons were excused from their duties under the contract, and (2) if they breached their contractual duties, whether Robin Drive is owed any damages.

For the reasons stated above, the Robinsons were not excused from their duties under the contract. Robin Drive had substantially complied with its responsibilities under the contract by delivering the Honda to the Robinsons. Therefore, the Robinsons breached their contractual duties on August 28, 2023, when they failed to start making payments on the Honda.

## IX. Mitigation of Damages

The non-breaching party, Robin Drive, has a duty to mitigate once a breach of contract occurs.[78] However, the Robinsons' claim is unsuccessful for the following reasons.

---

[76] *Emmett Hickman Co. v. Emilio Capano Dev., Inc.*, 251 A.2d 571, 73 (Del. Super. 1969).
[77] *Delaware Service, Inc. v. Royal Limousine Svc., Inc.*, 1991 WL 53449, at *3 (Del. Super. April 5, 1991).
[78] *Lowe v. Bennett*, 1994 WL 750378, at *4 (Del. Super. Dec. 29, 1994).

A fundamental principle of contract law is that the party suing for breach of contract must mitigate damages once a breach occurs, regardless of whether mitigation is expressly prescribed in the underlying contract.[79] The injured party's duty to mitigate commences after the offending party materially breaches the contract.[80] A party's duty to mitigate "is subject to reasonableness and whether the loss is mitigable."[81] Where a party fails to mitigate, their damages are limited to what they would have been had mitigation occurred.[82]

Here, the Court finds that the Robinsons breached their duty under the sales contract when they failed to pay for the Honda. Robin Drive's obligation to mitigate damages was triggered when the Robinsons breached the contract on August 28, 2023. Even assuming that the Honda was returned to Advance Service Center, as Robin Drive alleges, Robin Drive knew where the vehicle was. Robin Drive was also aware of the cost of recouping the Honda and how to sell it. Further, they have a cooperative agreement with Advance Service Center. Thus, once the Robinsons breached their agreement with Robin Drive, Robin Drive had a duty to recoup the Honda and sell it to mitigate its damages under the contract. Their failure to do so limits the amount of damages they can seek.

---

[79] *SHL Gen. Contractor, Inc. v. Ambience Inc.*, 2020 WL 1130325, at *6 (Del. Com. Pl. March 4, 2020).
[80] *Id.*
[81] *LG Elec. V. Invention Inv. Fund I, L.P.*, 2024 WL 4675050, at *8 (Del. Super. Sept. 25, 2024).
[82] *Id.*

The Robinsons would have been entitled to mitigation costs in the amount of the difference between the contract price and the price of the Honda at the time of breach. However, the Robinsons have failed to provide evidence on how much the Honda was worth to mitigate Robin Drive's damages. While it may seem axiomatic that the value of the vehicle eight (8) days later would be the same as at purchase, that is not necessarily true. In this case, there was testimony regarding a potential accident, driving on a flat tire, and adding substantial miles to the car. All of which, if true, would diminish the value even over a short period of time. Since the Court "may not set damages based on mere 'speculation or conjecture,'" it cannot arbitrarily set an amount because the Robinsons failed to adduce any evidence as to the worth of the Honda at the time of breach.[83]

---

[83] *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 613 (Del. Ch. 2010) (quoting *Medek v. Medek*, 20019 WL 2005365, at \*12 (Del. Ch. July 1, 2009)).

## CONCLUSION

The Court finds by a preponderance of the evidence at trial that Robin Drive has proven damages in the amount of $10,248.00. Therefore, the Court enters judgment in favor of Robin Drive against the Robinsons in the amount of $10,248.00, plus pre- and post-judgment interest at the contractual rate of 22.30% from August 28, 2023. The Court also awards Robin Drive reasonable attorneys' fees, in accordance with the agreement. To determine the attorney fee award, Plaintiff must file an affidavit of its attorneys' fees with an itemized billing statement for consideration.

**IT IS SO ORDERED.**

The Honorable Carl C Danberg
Chief Judge